## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## (SOUTHERN DIVISION)

|  |  |  |
|---|---|---|
| RAYMOND JONNA, SIMON JONNA, and FARID JAMARDOV, | : : : : : | Case No. 3:22-cv-10208-RHC-JJCG Hon. Laurie J. Michelson Mag. Jonathan J.C. Grey |
| Plaintiffs, | : : | |
| v. | : : | |
| KEVIN JONNA, and BITCOIN LATINUM, | : : : | |
| Defendants. | : : | |

## DEFENDANT BITCOIN LATINUM'S MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
## BE GRANTED AND FOR LACK OF PERSONAL JURISDICTION

Defendant, GIBF GP, Inc. d/b/a Bitcoin Latinum ("Latinum"), improperly pled as Bitcoin Latinum, by and through undersigned counsel, moves to dismiss Plaintiffs' Complaint and Jury Demand dated February 1, 2022 (the "Complaint") as to Latinum, for failure to state a claim upon which relief can be granted, and for lack of personal jurisdiction (the "Motion" or "Motion to Dismiss"). In support thereof, Latinum relies on *Defendant Bitcoin Latinum's Brief in Support of Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted and for Lack of Personal Jurisdiction* (the "Brief") attached hereto and the authority cited therein.

As set forth in the accompanying brief, this is a case of three individuals who were taken advantage of by an another family member who was in line to receive Bitcoin Latinum tokens ("Tokens") through Latinum's private placement offering made pursuant to Rule 506(d) of Regulation D under the Securities Act, 17 C.F.R. §230.501 et seq., acting independently of Latinum and without Latinum's knowledge, to make a quick profit at the expense of his own family.[1] Those individuals now seek to hold Latinum responsible for the nefarious and surreptitious scheme of their cousin. The Complaint should be dismissed as to Latinum. It fails to state a claim against Latinum upon which relief can be granted, and this Court is without personal jurisdiction over Latinum.

At the time of the complained-of conduct, and at the time Plaintiffs filed their Complaint, the Tokens had not yet been released by Latinum. In October of 2021, Latinum was offering the opportunity to pre-purchase Tokens at a set price to certain accredited investors who entered into a Simple Agreement for Future Tokens ("SAFT"). Interested investors could only purchase Tokens if they were accredited as that term is defined by Rule 501(a) of Regulation D under the Securities Act, 17 C.F.R. §230.501 et seq., and if they agreed to be bound by certain terms contained in the SAFT — including but not limited to acknowledging that the right to purchase

---

[1] All facts in this Motion to Dismiss are taken directly from the Complaint or from documents and websites referenced in the Complaint. They are assumed to be true for the purposes of this Motion to Dismiss only.

future Tokens was non-transferable, was for their own account, and was with full knowledge of the risks associated with such an investment. The terms and conditions set forth in the SAFT appeared on Latinum's website. The entire website of Latinum, referenced by Plaintiffs in their Complaint, is attached as Exhibit A, which includes the Terms and Conditions.

On October 25, 2021, Defendant Kevin Jonna ("KJ") executed a SAFT to purchase 125,000 Tokens at $8 per Token, for an aggregate purchase amount of $1,000,000. True and correct copies of the SAFT and supporting documents executed by KJ are attached as Exhibit B. It appears from the Complaint that just prior to executing the SAFT and delivering the same to Latinum, KJ embarked on an illegal and unauthorized scheme to sell Tokens - that he did not yet own - to members of his own family at steep markup.

In September 2021, KJ induced Plaintiff Simon Jonna ("SJ") to give him $140,000 for 10,000 Tokens at $14 per Token, and an additional $100,000 for 4,000 Tokens at $25 per Token. Plaintiffs' Complaint ¶ 40. Also, in or about September 2021, KJ induced Plaintiff Raymond Jonna ("RJ") to give him $100,000 for approximately 7,143 Tokens at $14 per Token, Plaintiffs' Complaint ¶ 43, and then an additional $100,000 for 4,000 Tokens at $25 per Token on or about October 27, 2021. Plaintiffs' Complaint ¶ 48. Finally, on or about October 21, 2021, KJ induced Plaintiff Farid Jamardov ("FJ") to give him $101,045 for approximately 6,734

2

Tokens at $15 per Token. Plaintiffs' Complaint ¶ 58. Altogether, KJ induced the Plaintiffs to give him a total of $541,045 for 31,877 Tokens, at an average price of approximately $16.97 per Token. Plaintiffs' Complaint ¶ 110.

The funds from SJ were sent via wire transfer "to a Westbury Bank account in the name of 'Jason Otto' (…1825)." Plaintiffs' Complaint ¶ 37. Jason Otto is himself an investor that executed a SAFT agreement. Other than as an investor in Latinum, Jason Otto is unknown to Latinum, and Plaintiffs do not allege that he is affiliated with Latinum in any way. The funds from RJ were sent via wire transfer "to a Citibank account in New York in the name of GIBF GP, Inc for 4,000 Tokens at $25 per Token. KJ instructed RJ to include 'for Kevin Jonna' in the memo line." Plaintiffs' Complaint ¶ 48. The funds from FJ were sent via wire transfer "to KJ as an investment in approximately 6,734 Tokens at $15 per Token." Plaintiffs' Complaint ¶58.

Plaintiffs do not and cannot allege that KJ was affiliated with Latinum in any way. He was not an employee, officer, director, nor an agent of Latinum at any time. In the Complaint, the Plaintiffs fail to allege any facts whatsoever to tie KJ to Latinum. He was never affiliated with Latinum. KJ is nothing more than a prospective investor in the Tokens just like any other potential investor. By Plaintiffs' own allegations, it was KJ, acting entirely independently of Latinum, who

induced the Plaintiffs to invest in the pre-purchase of the Tokens. Plaintiffs' Complaint ¶ 29.

The Complaint fails to set forth any connection between Latinum and KJ. Therefore, the Complaint should be dismissed as to Litinum under Fed. R. Civ. P. 12(b)(6).

In addition, Latinum did not purposefully avail itself of Michigan law, Plaintiffs' causes of action do not arise out of Latinum's contacts with Michigan, and it would be unreasonable for the Court to exercise personal jurisdiction over Latinum. Therefore, the Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(2).

WHEREFORE, for the reasons set forth herein and in the Brief, Latinum respectfully requests this Honorable Court enter an order dismissing the Complaint with prejudice and granting Latinum such other and further relief that the Court deems just and proper.

Respectfully Submitted,

COOPER LEVENSON, P.A.                    PLUNKETT COONEY

By: /s/ Eric A. Browndorf                By: /s/ Patrick C. Lannen
Eric A. Browndorf, Esq.                  Patrick C. Lannen (P73031)
William P. Rubley, Esq.                  John R. Stevenson (P70241)
1415 Marlton Pike East                   38505 Woodward Ave., Suite 100
Cherry Hill Plaza, Suite 205             Bloomfield Hills, MI  48304
Cherry Hill, NJ 08034                    (248) 901-4027
(856) 795-9110                           plannen@plunkettcooney.com
ebrowndorf@cooperlevenson.com            jstevenson@plunkettcooney.com
wrubley@cooperlevenson.com

Attorneys for Defendant Bitcoin          Attorneys for Defendant Bitcoin
Latinum                                  Latinum

*Applications for Admission Forthcoming*

Dated: February 23, 2022

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## (SOUTHERN DIVISION)

| | | |
|---|---|---|
| RAYMOND JONNA, SIMON JONNA, and FARID JAMARDOV, | : : : : | Case No. 3:22-cv-10208-RHC-JJCG Hon. Laurie J. Michelson Mag. Jonathan J.C. Grey |
| Plaintiffs, | : : | |
| v. | : : | |
| KEVIN JONNA, and BITCOIN LATINUM, | : : : | |
| Defendants. | : : | |

## DEFENDANT BITCOIN LATINUM'S BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK <u>OF PERSONAL JURISDICTION</u>

## **STATEMENT OF THE ISSUES PRESENTED**

I.      Should the Plaintiffs' Complaint be dismissed as to Latinum under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted where Plaintiffs' Complaint fails to allege any conduct on the part of Latinum or its employees, officers, directors, or agents which induced the Plaintiffs to invest money in Bitcoin Latinum Tokens?

Latinum Answer: "Yes."

II.     Should the Plaintiffs' Complaint be dismissed as to Latinum under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction where Latinum did not purposefully avail itself of Michigan law, where Plaintiffs' causes of action do not arise out of Latinum's contacts with Michigan, and where it would be unreasonable for the Court to exercise personal jurisdiction over Latinum?

Latinum Answer: "Yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

15 U.S.C. § 77b

15 U.S.C. § 77e

15 U.S.C. §§ 77l

15 U.S.C. § 78j

15 U.S.C. §78o

15 U.S.C. § 78u-4

17 C.F.R. § 240.10b-5

Cal. Bus. & Prof. Code § 17200

Cal. Bus. & Prof. Code § 17500

Cal. Corp. Code § 25008

Cal. Corp. Code § 25110

Cal. Corp. Code § 25401

Cal. Corp. Code § 25503

Cal. Corp. Code § 25504

Mich. Comp. Laws § 600.711

Mich. Comp. Laws § 600.715

Mich. Comp. Laws § 600.2919a

Fed. R. Civ. P. 12(b)(2)

Fed. R. Civ. P. 12(b)(6)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Atl. Recording Corp. v. Project Playlist, Inc*., 603 F. Supp. 2d 690 (S.D.N.Y. 2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)

*Gorran v. Atkins Nutritionals, Inc*., 464 F. Supp. 2d 315 (S.D.N.Y. 2006)

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc. ("Omnicare II")*, 719 F.3d 498 (6th Cir. 2013)

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)

*KBC Asset Mgmt. N.V. v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.)*, 769 F.3d 455 (6th Cir. 2014)

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997)

*SEC v. Cavanaugh*, 445 F.3d 105 (2d Cir. 2006)

*SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953)

*See, Inc. v. Imago Eyewear Pty Ltd.*, No. 04-2388, 167 Fed. Appx. 518 (6th Cir. Feb. 14, 2006)

*See, Inc. v. Imago Eyewear Pty, Ltd.*, No. 03-74761, 2004 WL 5569067 (E.D. Mich. Oct. 12, 2004), *aff'd*, 167 Fed Appx. 518, 523 (6th Cir. 2006)

*Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087 (6th Cir. 1989)

*Zippo Mfg. Co. v. Zippo DOT Com*, 952 F.Supp. 1119 (W.D. Pa. 1997)

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ....................................................... i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................ ii

TABLE OF CONTENTS ......................................................................................... iv

TABLE OF AUTHORITIES .................................................................................... vi

I.     INTRODUCTION ......................................................................................1

II.    BACKGROUND AND THE ALLEGATIONS OF THE
COMPLAINT ...............................................................................................4

    A.    Latinum promotes a new cryptocurrency that has yet to be
released ...........................................................................................4

    B.    KJ induces Plaintiffs to give him money for Tokens. ...............6

    C.    The Plaintiffs do not receive Tokens in the timeframe KJ
promised. ........................................................................................9

    D.    Plaintiffs ask for their money back. ..........................................10

    E.    Plaintiffs' Legal Claims. .............................................................10

III.   LEGAL ARGUMENT ...............................................................................12

    A.    The Complaint should be dismissed under Fed. R. Civ. P.
12(b)(6) because it fails to state a claim upon which relief
can be granted, as it does not allege any conduct on
Latinum's part which caused the Plaintiffs to invest money
with KJ. .......................................................................................12

       i.    Rule 12(b)(6) standard. ....................................................12

       ii.   Plaintiffs' Complaint fails to articulate sufficient
facts to state a plausible claim to relief as to Latinum
for the unregistered offer and sale of securities
because it does not set forth facts that support the
contention that Latinum offered Plaintiffs the
opportunity to purchase securities. ..................................14

       iii.  Plaintiffs' Complaint fails to articulate sufficient
facts to state a plausible claim to relief as to Latinum
for securities fraud because it does not set forth facts
that support the contention that Latinum offered
Plaintiffs the opportunity to purchase securities. ...........17

          a.    Misrepresentation or Omission. ...........................18

          b.    Scienter. ................................................................19

          c.    Causation. .............................................................21

          d.    Application. ...........................................................22

       iv.   Plaintiffs' Complaint fails to articulate sufficient
facts to state a plausible claim to relief as to Latinum

for fraudulent concealment, fraudulent misrepresentation, or wire fraud because it does not set forth facts that support the contention that Latinum made any communications with Plaintiffs regarding the Tokens. ....................................................23

v.    Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for unjust enrichment because the Complaint does not allege facts that support the contention that Latinum received a benefit from the Plaintiffs. ...........................24

vi.   Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for conversion because the Complaint does not allege facts that support the contention that Latinum ever had possession or dominion over Plaintiffs' money. ......25

vii.  Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for false advertising because the Complaint does not allege facts that support the contention that Latinum made any statements to the public which Latinum knew or should have known were untrue or misleading. ................................................................26

viii. Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for unfair competition. ....................................................30

B.    The Complaint should be dismissed as to Latinum under Fed. R. Civ. P. 12(b)(2) because this Court is without personal jurisdiction over Latinum. ...........................................30

i.    Standard of Review. ....................................................30

ii.   This Court cannot exercise general personal jurisdiction over Latinum. ..............................................31

C.    Latinum does not have sufficient minimum contacts with Michigan to establish specific personal jurisdiction in this forum. ........................................................................33

D.    Latinum has not purposefully availed itself of Michigan. .........34

E.    Plaintiffs' cause of action does not arise from the Latinum's activities in Michigan. ................................................................37

F.    Exercising jurisdiction over Latinum in this matter would be unreasonable. ........................................................................38

III.  CONCLUSION ................................................................................40

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Am. Greetings Corp. v. Cohn*,
   839 F.2d 1164 (6th Cir. 1988) ............................................................................ 39

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ........................................................................................... 12

*Atl. Recording Corp. v. Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ................................................................ 13

*Barber v SMH (US), Inc*,
   202 Mich. App. 366; 509 NW2d 791 (Mich. Ct. App. 1993) .............................. 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 12, 13

*Brown v. FunKtionwear, Inc.*,
   No. 08-14572, 2009 WL 2568508; 2009 U.S. Dist. LEXIS 72962, at *7-8 (E.D.
   Mich. Aug. 18, 2009) ........................................................................................ 36

*Bruschi v. Brown*,
   876 F.2d 1526 (11th Cir. 1989) ........................................................................ 21

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................................... 34

*Citigroup Inc., v. City Holding Co.*,
   97 F.Supp.2d 549 (S.D. N.Y. 2000) .................................................................. 35

*Clark v. Stone*,
   998 F.3d 287 (6th Cir. 2021) ................................................................ 5, 13, 32

*CompuServe, Inc. v. Patterson*,
   89 F.3d 1257 (6th Cir. 1996) .......................................................... 34, 38, 39

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................ 12

*Currie v. Cayman Res. Corp.*,
   835 F.2d 780 (11th Cir.1988) ............................................................................ 21

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) ............................................................................ 35

*E&M Props. v. Razorgator, Inc.*,
   No. 08-10377, 2008 WL 1837261 (E.D. Mich. Apr. 23, 2008)...........................31

*Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
   147 F.3d 118 (2d Cir. 1998) ...........................................................................14

*Foremost Ins. Co. v. Allstate Ins. Co.*,
   439 Mich. 378; 486 N.W.2d 600, 606 (Mich. 1992) ...........................................25

*Gorran v. Atkins Nutritionals, Inc.*,
   464 F. Supp. 2d 315 (S.D.N.Y. 2006)..........................................................5, 13

*Hi-Tex Inc. v TSG, Inc.*,
   87 F. Supp. 2d 738 (E.D. Mich. 2000) ...........................................................37

*Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.)*,
   183 F.3d 542 (6th Cir. 1999)........................................................................20

*Huddleston v. Herman & MacLean*,
   640 F.2d 534 (5th Cir. Unit A 1981), *aff'd in part, rev'd in part on other
   grounds*, 459 U.S. 375 (1983) ....................................................................21

*Inc. v. Imago Eyewear Pty, Ltd.*,
   No. 03-74761, 2004 WL 5569067 (E.D. Mich. Oct. 12, 2004), *aff'd*, 167 Fed.
   Appx. 518, 523 (6th Cir. 2006) ............................................................... 33, 37

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.
   Omnicare, Inc. ("Omnicare II")*,
   719 F.3d 498 (6th Cir. 2013) .......................................................................19

*Ind. State Dist. Council of Laborers v. Omnicare, Inc. ("Omnicare I")*,
   583 F.3d 935 (6th Cir. 2009) .......................................................................19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...................................................................................33

*Int'l Tech. Consultants, Inc. v. Euroglas S.A.*,
   107 F.3d 386 (6th Cir. 1997) ................................................................. 31, 40

*Jones v. Blige*,
   No. 04-60184, 2006 WL 1329247 (E.D. Mich. May 16, 2006).........................32

*KBC Asset Mgmt. N.V. v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.)*,
   769 F.3d 455 (6th Cir. 2014) ............................................................. 18, 20, 22

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
   106 F.3d 147 (6th Cir. 1997) ................................................................. 34, 37

*Maynard v. Philadelphia Cervical Collar Co., Inc.*,
   18 Fed.Appx. 814 (Fed. Cir. 2001) .......................................................35

*McGill v. Gourmet Techs., Inc.*,
   300 F.Supp.2d 501 (E.D. Mich. 2004) ..................................................35

*Mink v. AAAA Dev. LLC*,
   190 F.3d 333 (5th Cir. 1999) ................................................................35

*Murphy v. Sofamor Danek Grp., Inc. (In re Sofamor Danek Grp., Inc.)*,
   123 F.3d 394 (6th Cir. 1997) ................................................................19

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*,
   91 F.3d 790 (6th Cir. 1996) ..................................................................33

*Neogen Corp. v. Neo Gen Screening*,
   282 F.3d 883 (6th Cir. 2002) ................................................................34

*Osborne v. Subaru of Am., Inc.*,
   198 Cal.App.3d 646 (Cal. Dist. Ct. App.1988)......................................28

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
   288 F.3d 548 (3d Cir. 2002) .................................................................13

*Reynolds v. Int'l Amateur Athletic Fed'n*,
   23 F.3d 1110 (6th Cir. 1994) ................................................................39

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997)............................................................21

*Rousseff v. E.F. Hutton Co., Inc.*,
   843 F.2d 1326 (11th Cir. 1988)............................................................21

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164, 190 Cal. Rptr. 3d 411, 422 (Cal. Dist. Ct. App. 2015)28,
   29

*SEC v. Cavanaugh*,
   445 F.3d 105 (2d Cir. 2006) .................................................................14

*SEC v. Ralston Purina Co.*,
   346 U.S. 119 (1953) .............................................................................14

*Theunissen v. Matthews*,
   935 F.2d 1454 (6th Cir. 1991)..............................................................31

*Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*,
   882 F.2d 1087 (6th Cir. 1989).................................................... 32, 37

*Zippo Mfg. Co. v. Zippo DOT Com*,
  952 F.Supp. 1119 (W.D. Pa. 1997) .......................................................34

## **STATUTES**

15 U.S.C. § 77b(a)(3)...........................................................................15

15 U.S.C. § 77e ...................................................................................14

15 U.S.C. § 77e(a) ....................................................................... 14, 30

15 U.S.C. § 77e(c) ........................................................................ 14, 30

15 U.S.C. § 77l(a) ........................................................................ 14, 30

15 U.S.C. § 78u-4(b)(2) ............................................................... 20, 22

5 U.S.C. § 78j(b) ......................................................................... 17, 30

Cal. Bus. & Prof. Code § 17200 ................................................. 11, 30

Cal. Bus. & Prof. Code § 17500 ........................................... 11, 26, 27

Cal. Corp. Code § 25008(a) ...............................................................15

Cal. Corp. Code § 25401 ....................................................... 11, 18, 30

Cal. Corp. Code 25504...................................................................30

Cal. Corp. Code Section 25110............................................ 11, 14, 15, 30

Cal. Corp. Code Section 25402.......................................................18

Cal. Corp. Code Section 25503............................................ 11, 14, 30

Mich. Comp. Laws § 600.2919a .......................................................25

Mich. Comp. Laws § 600.2919a(1) ..................................................25

Mich. Comp. Laws § 600.711...........................................................31

Mich. Comp. Laws § 600.715...........................................................33

## **RULES**

17 C.F.R. § 240.10b-5.................................................................. 11, 17, 30

17 C.F.R. §230.501 ...........................................................................1, 2

Fed. R. Civ. P. 12(b)(2)................................................................... i, 30

Fed. R. Civ. P. 12(b)(6)............................................................ i, 12, 13

Fed. R. Civ. P. 9(b) ...........................................................................19

Rule 501(a)......................................................................................2, 5

Rule 506(d) ............................................................................................................1

## BRIEF IN SUPPORT

Defendant, GIBF GP, Inc. d/b/a Bitcoin Latinum ("Latinum"), improperly pled as Bitcoin Latinum, by and through undersigned counsel, submits this brief in support of its motion to dismiss Plaintiffs' Complaint and Jury Demand dated February 1, 2022 (the "Complaint") as to Latinum, for failure to state a claim upon which relief can be granted, and for lack of personal jurisdiction (the "Motion" or the "Motion to Dismiss").

## I.    INTRODUCTION[2]

This is a case of three individuals who were taken advantage of by an another family member who was in line to receive Bitcoin Latinum tokens ("Tokens") through Latinum's private placement offering made pursuant to Rule 506(d)  of Regulation D under the Securities Act, 17 C.F.R. §230.501 et seq., acting independently of Latinum and without Latinum's knowledge, to make a quick profit at the expense of his own family. Those individuals now seek to hold Latinum responsible for the nefarious and surreptitious scheme of their cousin. The Complaint should be dismissed as to Latinum. It fails to state a claim against

---

[2] All facts in this Motion to Dismiss are taken directly from the Complaint or from documents and websites referenced in the Complaint. They are assumed to be true for the purposes of this Motion to Dismiss only.

1

Latinum upon which relief can be granted, and this Court is without personal jurisdiction over Latinum.

At the time of the complained-of conduct, and at the time Plaintiffs filed their Complaint, the Tokens had not yet been released by Latinum. In October of 2021 Latinum was offering the opportunity to pre-purchase Tokens at a set price to certain accredited investors who entered into a Simple Agreement for Future Tokens ("SAFT"). Interested investors could only purchase Tokens if they were accredited as that term is defined by Rule 501(a) of Regulation D under the Securities Act, 17 C.F.R. §230.501 et seq., and if they agreed to be bound by certain terms contained in the SAFT — including but not limited to acknowledging that the right to purchase future Tokens was non-transferable, was for their own account, and was with full knowledge of the risks associated with such an investment. The terms and conditions set forth in the SAFT appeared on Latinum's website. The entire website of Latinum, referenced by Plaintiffs in their Complaint, is attached as Exhibit A, which includes the Terms and Conditions.

On October 25, 2021, Defendant Kevin Jonna ("KJ") executed a SAFT to purchase 125,000 Tokens at $8 per Token, for an aggregate purchase amount of $1,000,000. True and correct copies of the SAFT and supporting documents executed by KJ are attached as Exhibit B. It appears from the Complaint that just prior to executing the SAFT and delivering the same to Latinum, KJ embarked on

an illegal and unauthorized scheme to sell Tokens - that he did not yet own - to members of his own family at steep markup.

In September 2021, KJ induced Plaintiff Simon Jonna ("SJ") to give him $140,000 for 10,000 Tokens at $14 per Token, and an additional $100,000 for 4,000 Tokens at $25 per Token. Plaintiffs' Complaint ¶ 40. Also, in or about September 2021, KJ induced Plaintiff Raymond Jonna ("RJ") to give him $100,000 for approximately 7,143 Tokens at $14 per Token, Plaintiffs' Complaint ¶ 43, and then an additional $100,000 for 4,000 Tokens at $25 per Token on or about October 27, 2021. Plaintiffs' Complaint ¶ 48. Finally, on or about October 21, 2021, KJ induced Plaintiff Farid Jamardov ("FJ") to give him $101,045 for approximately 6,734 Tokens at $15 per Token. Plaintiffs' Complaint ¶ 58. Altogether, KJ induced the Plaintiffs to give him a total of $541,045 for 31,877 Tokens, at an average price of approximately $16.97 per Token. Plaintiffs' Complaint ¶ 110.

The funds from SJ were sent via wire transfer "to a Westbury Bank account in the name of 'Jason Otto' (…1825)." Plaintiffs' Complaint ¶ 37. Jason Otto is himself an investor that executed a SAFT agreement. Other than as an investor in Latinum, Jason Otto is unknown to Latinum, and Plaintiffs do not allege that he is affiliated with Latinum in any way. The funds from RJ were sent via wire transfer "to a Citibank account in New York in the name of GIBF GP, Inc for 4,000 Tokens at $25 per Token. KJ instructed RJ to include 'for Kevin Jonna' in the memo line."

Plaintiffs' Complaint ¶ 48. The funds from FJ were sent via wire transfer "to KJ as an investment in approximately 6,734 Tokens at $15 per Token." Plaintiffs' Complaint ¶58.

Plaintiffs do not and cannot allege that KJ was affiliated with Latinum in any way. He was not an employee, officer, director, nor an agent of Latinum at any time. In the Complaint, the Plaintiffs fail to allege any facts whatsoever to tie KJ to Latinum. He was never affiliated with Latinum. KJ is nothing more than a prospective investor in the Tokens just like any other potential investor. By Plaintiffs' own allegations, it was KJ, acting entirely independently of Latinum, who induced the Plaintiffs to invest in the pre-purchase of the Tokens. Plaintiffs' Complaint ¶ 29.

The Complaint fails to set forth any connection between Latinum and KJ. And therefore, the Complaint should be dismissed.

## II.    BACKGROUND AND THE ALLEGATIONS OF THE COMPLAINT

### A.    Latinum promotes a new cryptocurrency that has yet to be released.

Latinum is the promoter of the Tokens, which is a "next-generation Bitcoin blockchain-based token, capable of massive transaction volume, digital asset management, cybersecurity, and transaction capacity." Plaintiffs' Complaint ¶ 19(a).

Latinum is a Delaware domestic corporation with its principal place of business being in California.[3] Plaintiffs' Complaint ¶ 6.

Latinum's website, which is incorporated in Plaintiffs' Complaint by reference,[4] Plaintiffs' Complaint ¶ 6, 19, contains the SAFT under its "Terms and Conditions" page, which all investors must execute in order to purchase Tokens. A true and correct copy of the "Terms and Conditions" as they appeared on the website of Latinum is separately attached as Exhibit C. As a precondition to purchasing Tokens, the Terms and Conditions require interested purchasers to represent that they are "an 'accredited Investor' as such term is defined in Rule 501(a) of Regulation D under the Securities Act . . . ." Exhibit C, ¶ 5(b). The Terms and Conditions require interested purchasers to represent that:

> The Investor is purchasing this security instrument for his, her or its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and the Investor has no present intention of selling, granting any participation in,

---

[3] Although this is not pled in Plaintiffs' Complaint, the Court "may take judicial notice of public records, and we are not required to accept as true factual allegations that are contradicted by those records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021). Public records available on the Delaware Division of Corporations' website indicate that GIBF GP, INC. (the legal entity name of Latinum) is a Delaware domestic corporation, incorporated in the State of Delaware on May 18, 2018.

[4] "Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009). *See also Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 319 n.1 (S.D.N.Y. 2006) (considering website where website is incorporated by reference into complaint).

> or otherwise distributing the same. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment without impairing the Investor's financial condition, and is able to bear the economic risk of such investment for an indefinite period of time.

Id. Under the Terms and Conditions interested purchasers further represent that they have "been advised that this SAFT is a security that has not been registered under the Securities Act, or any state securities laws and, therefore, cannot be resold unless registered under the Securities Act and applicable state securities laws or unless an exemption from such registration requirements is available." Id.

The Terms and Conditions provide for the delivery of Tokens "[u]pon the satisfaction of the Milestone by GIBF GP, Inc." Exhibit C, ¶ 1(b). The "Milestone" is defined in the Terms and Conditions: "'Milestone' means the newly forked Bitcoin Network is operational after a successful Hard Fork with Token functionality as determined by the Company in its sole discretion." Exhibit C, ¶ 2. As of the date of this Motion to Dismiss, Latinum has not yet met the satisfaction of the Milestone and no Tokens have been released. Id.

### B.   KJ induces Plaintiffs to give him money for Tokens.

Prior to signing the SAFT to purchase Tokens, KJ began inducing the Plaintiffs to give him money in exchange for the promise of receiving Tokens. In September 2021, KJ induced SJ to give him $140,000 for 10,000 Tokens at $14 per

Token, and an additional $100,000 for 4,000 Tokens at $25 per Token. Plaintiffs' Complaint ¶ 40. Also, in or about September 2021, KJ induced RJ to give him $100,000 for approximately 7,143 Tokens at $14 per Token, Plaintiffs' Complaint ¶ 43, and then an additional $100,000 for 4,000 Tokens at $25 per Token on or about October 27, 2021. Plaintiffs' Complaint ¶ 48. Finally, on or about October 21, 2021, KJ induced FJ to give him $101,045 for approximately 6,734 Tokens at $15 per Token. Plaintiffs' Complaint ¶ 58. Altogether, KJ induced the Plaintiffs to give him a total of $541,045 for 31,877 Tokens, at an average price of approximately $16.97 per Token. Plaintiffs' Complaint ¶ 110.

The funds from SJ were sent via wire transfer "to a Westbury Bank account in the name of 'Jason Otto' (…1825)." Plaintiffs' Complaint ¶ 37. Jason Otto is himself an investor that executed a SAFT agreement. Other than as an investor in Latinum, Jason Otto is unknown to Latinum, and Plaintiffs do not allege that he is affiliated with Latinum in any way. The funds from RJ were sent via wire transfer "to a Citibank account in New York in the name of GIBF GP, Inc for 4,000 Tokens at $25 per Token. KJ instructed RJ to include 'for Kevin Jonna' in the memo line." Plaintiffs' Complaint ¶ 48. The funds from FJ were sent via wire transfer "to KJ as an investment in approximately 6,734 Tokens at $15 per Token." Plaintiffs' Complaint ¶58.

KJ held himself out to Plaintiffs as a cryptocurrency expert. Plaintiffs' Complaint ¶ 30. He claimed that he was going to invest more than $3,500,000 from his personal funds in the Tokens. Plaintiffs' Complaint ¶ 31. "KJ sent to SJ numerous images and text messages with articles about Latinum. KJ even sent to SJ a vague snapshot of what KJ represented to be and purported to be a personal bank account with funds totaling over $50,000,000.00 as a reinforcement to accredit KJ's extensive tenure and success within the crypto space." Plaintiffs' Complaint ¶ 33. KJ went as far as to promise to personally guarantee the money that SJ and others would invest and invested in Latinum. Plaintiffs' Complaint ¶ 34. KJ told the Plaintiffs that they would receive the Tokens immediately. Plaintiffs' Complaint ¶ 36, 50, 56.

KJ was aware that the Plaintiffs were not experts in cryptocurrency, and he held himself out to be a cryptocurrency expert when he induced them to give him money for Tokens. Plaintiffs' Complaint ¶ 30. KJ sought the investment of SJ in particular because of SJ's credibility in the investment arena. Plaintiffs' Complaint ¶ 31. KJ wanted SJ to introduce him to SJ's associates, attorneys, investors and inner circles. Plaintiffs' Complaint ¶ 32. In a series of text messages in or about September 2021, KJ advised SJ: "You should put big money in cuz" and "Trust me I know a lot" and "Put big money in it it's better than any investment." Plaintiffs' Complaint ¶ 39.

Likewise, KJ sought investment from RJ and induced him to invest by sending RJ positive articles about the investment outlook of the Tokens. Plaintiffs' Complaint ¶ 43. KJ also induced FJ to invest in or about October 2021 by representing to FJ that FJ would receive his Tokens the next day after transferring the money. Plaintiffs' Complaint ¶ 56.

### C.   The Plaintiffs do not receive Tokens in the timeframe KJ promised.

After being promised by KJ that they would receive Tokens shortly after transferring their funds in September and October 2021, Plaintiffs' Complaint ¶ 36, 50, 56, Plaintiffs did not receive any Tokens from KJ. Plaintiffs' Complaint ¶ 42, 55, 59. The Plaintiffs each made repeated attempts to get more information from KJ regarding the Tokens, to no avail. Plaintiffs' Complaint ¶ 41, 45, 59. Plaintiffs do not allege in their Complaint that KJ ever advised Plaintiffs about the mechanism by which Tokens would be released upon the achievement of the Milestone. Rather, KJ continued to make reassurances that the Tokens would be released soon. Plaintiffs' Complaint ¶ 36, 47, 50, 59.

After KJ induced FJ to give him money for Tokens, he then advised FJ that he did not know when the Tokens would be delivered. Plaintiffs' Complaint ¶ 58. Plaintiffs do not allege that KJ ever advised SJ or RJ that he did not know when the Tokens would be delivered.

Plaintiffs make no reference to any promise or representation by Latinum as to when they would receive their Tokens.

### D.    Plaintiffs ask for their money back.

After Plaintiffs made unsuccessful attempts to get more information from KJ as to when they would receive Tokens, Plaintiffs' Complaint ¶ 36, 50, 56, Plaintiffs RJ and FJ asked KJ to return their money. Plaintiffs' Complaint ¶ 54, 63. Plaintiffs do not allege that SJ asked for his money back. KJ evaded RJ and FJ's correspondences in which they requested refunds. Plaintiffs' Complaint ¶ 52, 53, 62. As of the filing of Plaintiffs' Complaint, none of the Plaintiffs received any Tokens or a refund from KJ. Plaintiffs' Complaint ¶ 42, 55, 64. On February 2, 2022, Plaintiffs filed the instant Complaint against KJ and Latinum. Plaintiffs' Complaint.

Plaintiffs do not allege that they requested a refund directly from Latinum or that Latinum would have any reason to believe they invested so to grant a refund.

### E.    Plaintiffs' Legal Claims.

In their Complaint, Plaintiffs claim that Latinum is responsible for KJ inducing them to invest in Tokens without any supporting facts. Plaintiffs do not allege in their complaint that KJ was at any time an employee, officer, director, or an agent of Latinum. Despite the fact that Plaintiffs do not set forth any facts that tie KJ to Latinum, or any facts that suggest Latinum was involved in the inducement of

Plaintiffs to invest in Tokens, Plaintiffs claim that Latinum, along with KJ, offered and sold unregistered securities to Plaintiffs. Plaintiffs' Complaint ¶ 72, 80.

Plaintiffs assert claims against KJ and Latinum for (1) unregistered offer and sale of securities in violation of Sections 5 and 12(a) of the Securities Act (Count I); (2) unregistered offer and sale of securities in violation of California Corporations Code Sections 25110 and 25503 (Count II); (3) securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 (Count III); (4) securities fraud in violation of California Corporations Code Sections 25401 (Count IV); (5) rescission under Section 29(b) of the Exchange Act (Count V); (6) fraudulent concealment (Count VI); (7) fraudulent inducement (only against KJ) (Count VII); (8) fraudulent misrepresentation (Count VIII); (9) breach of contract (only against KJ) (Count IX); (10) unjust enrichment (Count X); (11) conversion (Count XI); (12) intentional tort of wire fraud in Violation of 18 U.S.C. § 1343 (Count XII); (13) securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5 and California Corporations Code Sections 25401 (Count XIII); (14) false advertising in violation of Business and Professions Code Section 17500, *et seq.* (Count XIV); and (15) unfair competition in violation of Business and Professions Code Section 17200, *et seq.* (Count XV).

## III.   LEGAL ARGUMENT

### A.   The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be granted, as it does not allege any conduct on Latinum's part which caused the Plaintiffs to invest money with KJ.

#### i.   Rule 12(b)(6) standard.

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "mere conclusory statements" do not suffice. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Mere conclusions," however,

"are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Generally, a court considering a motion to dismiss under Rule 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the Court may consider documents that are referenced in the Complaint on a motion to dismiss. *Atl. Recording Corp*, 603 F. Supp. 2d at 694 n.3 ("Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss."). See also *Gorran*, 464 F. Supp. 2d at 319 n.1 (considering website where website is incorporated by reference into complaint). Furthermore, the Court "may take judicial notice of public records, and we are not required to accept as true factual allegations that are contradicted by those records." *Clark*, 998 F.3d at 298.

     **ii.**    **Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for the unregistered offer and sale of securities because it does not set forth facts that support the contention that Latinum offered Plaintiffs the opportunity to purchase securities.**

Plaintiffs' claims that Latinum offered and sold unregistered securities in violation of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c) and 77l(a) and California Corporations Code Sections 25110 and 25503 is wholly without merit. Plaintiffs' Complaint ¶ 76, 83.

To state a cause of action under Section 5 of the Securities Act, 15 U.S.C. § 77e, a plaintiff must show:

     (1) lack of a registration statement as to the subject securities;

     (2) the offer or sale of the securities; and

     (3) the use of interstate transportation or communication and the mails in connection with the offer or sale.

*SEC v. Cavanaugh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006) (quoting *Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 n.4 (2d Cir. 1998) (internal quotation marks omitted)). "Once a prima facie case has been made, the defendant bears the burden of proving the applicability of an exemption." *Id.* (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953)). Section 2 of the Securities Act defines "offer" for the purposes of the Act as including "every attempt

or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." 15 U.S.C. § 77b(a)(3).

Moreover, Section 25110 of the California Corporations Code makes it unlawful "for any person to offer or sell in this state any security in an issuer transaction . . . unless such sale has been qualified . . . or unless such security or transaction is exempted or not subject to qualification under Chapter 1 (commencing with Section 25100) of this part." Cal. Corp. Code § 25110. Section 25008 of the California Corporations Code defines "offer": "[a]n offer or sale of a security is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or (if both the seller and the purchaser are domiciled in this state) the security is delivered to the purchaser in this state." Cal. Corp. Code § 25008(a).

Plaintiffs' Complaint fails to state a claim against Latinum under either the Securities Act or the California Corporations Code because the Complaint does not set forth any factual assertions that Latinum was ever involved in making an "offer" to Plaintiffs to sell them securities. Construing the Complaint in the light most favorable to the Plaintiffs, the Complaint merely sets forth allegations that KJ, not Latinum, made efforts to induce Plaintiffs to invest in Tokens. The Complaint does not allege that Latinum, its employees, officers, directors, or agents, made any attempt or offer to dispose of a security or interest in a security for value with respect

15

to Plaintiffs. Nor does the Complaint allege that Latinum, its employees, officers, directors, or agents, made any attempt to solicit Plaintiffs to offer to buy security or interest in a security for value.

The facts set forth in the Complaint regarding the conduct that induced Plaintiffs to invest involve only KJ, not Latinum. According to the Complaint, it was KJ who induced SJ to invest: "[i]n or about September 2021, **Defendant KJ induced SJ to invest in Latinum**." Plaintiffs' Complaint ¶ 29 (emphasis added). It was KJ who induced RJ to invest: "[i]n or about September of 2021, **Defendant KJ induced RJ to invest in Latinum** by, among other things, sending articles to RJ about how Latinum was going to revolutionize the crypto space." Plaintiffs' Complaint ¶ 43 (emphasis added). And it was KJ who induced FJ to invest: "[i]n or about October 2021, **Defendant KJ induced FJ to invest in Latinum Tokens**." Plaintiffs' Complaint ¶ 56 (emphasis added).

Plaintiffs invested solely on the basis of KJ's inducements. The Complaint plainly states that "**[a]s a result of KJ's representations and inducement**, SJ made an initial investment of $140,000 in Tokens." Plaintiffs' Complaint ¶ 37 (emphasis added). The Complaint further admits that "**[a]s a result of KJ's representations and inducement**, RJ made an initial investment of $100,000 in approximately 7,143 Tokens at $14 per Token." Plaintiffs' Complaint ¶ 43 (emphasis added).

Plaintiffs' Complaint fails to set forth any factual content whatsoever that KJ was ever an employee, officer, director, or an agent of Latinum. The Complaint alleges no affiliation between KJ and Latinum in any way. Plaintiffs' Complaint fails to set forth any contention that Latinum or its employees, officers, directors, or agents ever had any contact with Plaintiffs regarding an investment in Tokens. Plaintiffs' Complaint further fails to set forth any contention that Latinum was ever aware that Plaintiffs invested money with KJ for the purported purpose of purchasing Tokens before the filing of the Complaint.

For the reasons stated above, the Complaint must be dismissed as to Latinum. It fails to set forth any factual allegations that Latinum made an "offer" to Plaintiffs to sell them securities under either the Securities Act or the California Corporations Code.

> ### iii. Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for securities fraud because it does not set forth facts that support the contention that Latinum offered Plaintiffs the opportunity to purchase securities.

Plaintiffs' Complaint claims that Latinum violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs' Complaint ¶ 87.

In order to state a claim for securities fraud under Rule 10b-5, a plaintiff must establish:

17

(1) a material misrepresentation or omission by the defendant;
(2) scienter;
(3) a connection between the misrepresentation or omission and the purchase or sale of a security;
(4) reliance upon the misrepresentation or omission;
(5) economic loss; and
(6) loss causation.

*KBC Asset Mgmt. N.V. v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.)*, 769 F.3d 455, 469 (6th Cir. 2014).

Plaintiffs also claim that Latinum committed securities fraud in violation of Section 25402 of the California Corporations Code. Plaintiffs' Complaint ¶ 91. Section 25402 provides:

> It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading.

Cal. Corp. Code § 25401.

### a.   Misrepresentation or Omission.

"Successfully pleading an actionable material misrepresentation or omission requires a plaintiff to allege facts demonstrating two things: (1) that a defendant made a statement or omission that was false or misleading; and (2) that this statement or omission concerned a material fact." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 470. "General allegations of these two components, however, are not enough. Under

Federal Rule of Civil Procedure 9(b)  and the [Private Securities Litigation Reform Act of 1995 ("PSLRA")], a plaintiff's complaint must also 'allege the time, place, and content of the alleged misrepresentation [or omission] on which he or she relied [and] the fraudulent scheme . . . .'" Id. (alterations in original) (quoting *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc. ("Omnicare II")*, 719 F.3d 498, 503 (6th Cir. 2013)).

"A misrepresentation is an affirmative statement that is misleading or false. When an alleged misrepresentation concerns 'hard information'—'typically historical information or other factual information that is objectively verifiable'—it is actionable if a plaintiff pleads facts showing that the statement concerned a material fact and that it was objectively false or misleading. *Id.* (quoting *Murphy v. Sofamor Danek Grp., Inc. (In re Sofamor Danek Grp., Inc.)*, 123 F.3d 394, 401 (6th Cir. 1997)). "When an alleged misrepresentation concerns 'soft information,' which 'includes predictions and matters of opinion,' a plaintiff must additionally plead facts showing that the statement was 'made with knowledge of its falsity.'" *Id.* (quoting *Ind. State Dist. Council of Laborers v. Omnicare, Inc. ("Omnicare I")*, 583 F.3d 935, 945-946 (6th Cir. 2009)).

### b.    Scienter.

With respect to scienter, "plaintiffs must plead facts showing that defendants had a 'mental state embracing intent to deceive, manipulate or defraud.'" *Id.* at 472

(quoting *Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.)*, 183 F.3d 542, 548-49 (6th Cir. 1999)). A plaintiff in a securities fraud case must meet the elevated pleading standard imposed by Congress to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 472-73.

The Sixth Circuit has adopted the following rule for evaluating whether a defendant has acted with scienter:

> The state(s) of mind of any of the following are probative for purposes of determining whether a misrepresentation made by a corporation was made by it with the requisite scienter under Section 10(b): . . .
>
> > a. The individual agent who uttered or issued the misrepresentation;
> >
> > b. Any individual agent who authorized, requested, commanded, furnished information for, prepared (including suggesting or contributing language for inclusion therein or omission therefrom), reviewed, or approved the statement in which the misrepresentation was made before its utterance or issuance;
> >
> > c. Any high managerial agent or member of the board of directors who ratified, recklessly disregarded, or tolerated the misrepresentation after its utterance or issuance . . . .

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 476.

### c.    Causation.

"To prove the causation element, a plaintiff must prove both 'transaction causation' and 'loss causation.'" *Robbins v. Koger Props.*, 116 F.3d 1441, 1447 (11th Cir. 1997) (quoting *Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989)). "Transaction causation, another way of describing reliance, is established when the misrepresentations or omissions cause the plaintiff 'to engage in the transaction in question.'" *Id.* (quoting *Currie v. Cayman Res. Corp.*, 835 F.2d 780, 785 (11th Cir.1988)). "As such, transaction causation is akin to actual or 'but for' causation." Id.

"To prove loss causation, a plaintiff must show 'that the untruth was in some reasonably direct, or proximate, way responsible for his loss.'" *Id.* (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. Unit A 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375 (1983)). "If the investment decision is induced by misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted." *Id.* (quoting *Huddleston*, 640 F.2d at 459). "In other words, loss causation describes 'the link between the defendant's misconduct and the plaintiff's economic loss.'" *Id.* (quoting *Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326, 1329 n. 2 (11th Cir. 1988)). Further, a plaintiff must show

that "the misrepresentation touches upon the reasons for the investment's decline in value." *Huddleston*, 640 F.2d at 459.

### d.    Application.

Plaintiffs' Complaint fails to state a cause of action for securities fraud against Latinum for several reasons. First, the Complaint does not set forth any facts alleging that Latinum made a material misrepresentation or omission regarding an investment in Tokens. In fact, the Complaint fails to assert that Latinum or its employees, officers, directors, or agents made any statements at all. The complaint simply does not allege any conduct — lawful or unlawful — on the part of Latinum. Second, the Complaint fails to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 472-73. The Complaint simply makes the conclusory statement that Defendants, including Latinum, acted "with scienter." Plaintiffs' Complaint ¶ 86. Plaintiffs do not even attempt to comply with the elevated pleading standard with regard to scienter. Third, the Complaint does not plead facts at all suggesting that Plaintiffs relied on any statement or conduct made by Latinum or its employees, officers, directors, or agents in deciding to invest in Tokens. Accordingly, the Complaint should be dismissed as to Latinum.

Similarly, Plaintiffs' claim for rescission under Section 29(b) of the Exchange Act, which also requires plaintiffs to plead that Defendants "effect[ed] any

transaction in . . . securities" or "attempt[ed] to induce the purchase or sale of, any security," 15 U.S.C. §78o(a)(1), should be dismissed as to Latinum because the Complaint does not allege any conduct on the part of Latinum that suggests that Latinum effected a transaction in securities or attempted to induce the purchase or sale of any security with respect to Plaintiffs. There is no transaction between the Plaintiffs and Latinum that could be rescinded. None of them actually invested with Latinum.

> **iv.  Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for fraudulent concealment, fraudulent misrepresentation, or wire fraud because it does not set forth facts that support the contention that Latinum made any communications with Plaintiffs regarding the Tokens.**

Plaintiffs' Complaint makes claims against Latinum for fraudulent concealment, Plaintiffs' Complaint ¶ 101, fraudulent misrepresentation, Plaintiffs' Complaint ¶ 128, and wire fraud. Plaintiffs' Complaint ¶ 154. Each of these claims should be dismissed as to Latinum for substantially the same reasons stated above: the Complaint fails to set forth any facts that suggest that Latinum was ever aware of Plaintiffs' investments with KJ, nor does it set forth any facts that suggest that Latinum was ever involved in inducing Plaintiffs to invest money with KJ.

### v. Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for unjust enrichment because the Complaint does not allege facts that support the contention that Latinum received a benefit from the Plaintiffs.

Plaintiffs' Complaint claims that Latinum was unjustly enriched as a result of Plaintiffs investing money with KJ. Plaintiffs' Complaint ¶ 136. The Complaint should be dismissed as to Latinum with respect to the claim of unjust enrichment because the Complaint does not set forth any facts that suggest that Latinum received a benefit from the Plaintiffs in connection with their investment of money with KJ, the retention of which would be unjust.

"The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v SMH (US), Inc*, 202 Mich. App. 366, 375; 509 NW2d 791 (1993).

The Complaint alleges that KJ did not use the $541,045 that Plaintiffs gave to KJ to purchase Tokens. Plaintiffs' Complaint ¶ 139. If true, it follows that this money was not remitted to Latinum, and that Latinum received no benefit as a result of Plaintiffs investment with KJ. While Plaintiffs allege that the funds from RJ were sent via wire transfer to a bank account in Latinum's name, Plaintiffs also admit that "KJ instructed RJ to include 'for Kevin Jonna' in the memo line." Plaintiffs' Complaint ¶ 48. If it is true that RJ wired the money to Latinum's account, it

nonetheless follows that it was not unjust for Latinum to retain the funds for the account of KJ as directed by RJ, since Latinum gave consideration for the funds in the form of the pre-purchase of the tokens at a set price. It also follows that Latinum gave such consideration to KJ at the direction of RJ. There is not alleged any purchase and sale by Plaintiffs and Latinum. Accordingly, the Complaint should be dismissed as to Latinum with respect to the claim of unjust enrichment.

> ### vi. Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for conversion because the Complaint does not allege facts that support the contention that Latinum ever had possession or dominion over Plaintiffs' money.

Plaintiffs' Complaint claims that Latinum wrongfully exercised dominion and control over the Plaintiffs' money. Plaintiffs' Complaint ¶ 148. The Complaint should be dismissed as to Latinum as there are no facts to support the claim that Latinum wrongfully exerted control over any of the Plaintiffs' personal property.

The common law tort of conversion is described as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600, 606 (Mich. 1992). Under Mich. Comp. Laws § 600.2919a, a person damaged by the common law tort of conversion may recover three times the amount of actual damages sustained, plus costs and reasonable attorney fees. Mich. Comp. Laws § 600.2919a(1).

The complaint does not set forth any factual allegations that Latinum ever wrongfully possessed or exercised dominion or control over any of the funds that the Plaintiffs invested. All of the funds were remitted either directly to KJ, to a "Jason Otto," who is himself an investor that executed a SAFT agreement, and other than as an investor in Latinum, Jason Otto is unknown to Latinum and whom Plaintiffs do not allege is affiliated with Latinum in any way, or to a bank account in Latinum's name on behalf of KJ, to be held for KJ's account. Plaintiffs' Complaint ¶¶ 37, 48, 58. Accordingly, the Complaint does not state a plausible claim for conversion against Latinum.

> **vii. Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for false advertising because the Complaint does not allege facts that support the contention that Latinum made any statements to the public which Latinum knew or should have known were untrue or misleading.**

Plaintiffs' Complaint claims that Latinum engaged in false advertising in violation of Cal. Bus. & Prof. Code § 17500. Plaintiffs' Complaint ¶ 165. The Complaint should be dismissed as to Latinum with respect to the claim of false advertising because the Complaint does not allege any specific facts indicating that Latinum made any statements to the public which Latinum knew or should have known were untrue or misleading.

Cal. Bus. & Prof. Code § 17500 makes it unlawful for a person, firm, corporation or association, or any employee thereof to make any statement, for the

purposes of inducing the public to purchase property or services, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500.[5] Importantly, "[s]ellers are permitted to 'puff' their products by stating opinions

---

[5] Cal. Bus. & Prof. Code § 17500 provides, in full:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

about the quality of the goods so long as they do not cross the line and make factual representations about important characteristics like a product's safety." *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1176, 190 Cal. Rptr. 3d 411, 422 (Cal. Dist. Ct. App. 2015) (quoting *Osborne v. Subaru of Am., Inc.*, 198 Cal.App.3d 646, 660, fn. 8 (Cal. Dist. Ct. App.1988)).

The Complaint does not specifically state which statement or advertisement on the part of Latinum allegedly violates this statute. The only statements that Plaintiffs allege Latinum made are those contained on Latinum's website. Specifically, Plaintiffs allege that Latinum's website advertises itself as a "next-generation Bitcoin blockchain-based token, capable of massive transaction volume, digital asset management, cybersecurity, and transaction capacity." Plaintiffs' Complaint ¶ 19(a). Plaintiffs further allege that Latinum's website states "Bitcoin Latinum asset backing is held in a fund model so that base asset value increases over time. It accelerates this asset back funds growth by depositing 80% of the transaction fee back into the asset fund." Plaintiffs' Complaint ¶ 19(a). Plaintiffs allege that Latinum's website "advertises that the Token is currently listed on crypto exchanges under the ticker 'LTNM,'" that Latinum "purports to target the 'Media, Gaming, Cloud Computing, and Telecommunications Industries,'" and that Latinum's website "provides a 'Bitcoin Latinum Investor Analysis' which includes projections,

risks and mitigating factors, competition, and other indicia of a prospectus or private placement memorandum." Plaintiffs' Complaint ¶ 19(c)-(e).

Plaintiffs further allege that Latinum's website contains "press releases that are designed, at least in part, to induce investors and potential investors to invest in Tokens and to lull investors and potential investors to believe that the securities that Defendant Latinum was and purports to issue have value." Plaintiffs' Complaint ¶ 65. Plaintiffs allege that Latinum issued a press release "claiming to partner with a Grammy-nominated recording artist to acquire what purports to be a non-fungible token in 'Cyber Yachts.'" Plaintiffs' Complaint ¶ 66. Finally, Plaintiffs allege that Latinum "claims to have entered into relationships of different forms with, *inter alia*, Vast Bank, LBank Exchange, Quavo, OSO ATMs to install ATMs in the United States, AAX Exchange, Hotbit Exchange, HitBTC, Changelly, GK8, Bitmart, XT.com, FMFW.io, DigiFinex Exchange, Monsoon Blockchain, Crypto Climate Accord, H. Wood Group, and CoinMarketCap." Plaintiffs' Complaint ¶ 67.

Plaintiffs' Complaint does not specify how or why any of these statements are alleged to be false. With respect to the alleged statements that Latinum advertises itself as a "next-generation Bitcoin blockchain-based token, capable of massive transaction volume, digital asset management, cybersecurity, and transaction capacity," Plaintiffs' Complaint ¶ 19(a), these statements are easily categorized as "opinions about the quality of the" Tokens. See *Rutledge*, 238 Cal. App. 4th at 1176.

29

With respect to the rest of the above-mentioned alleged statements, Plaintiffs do not allege that any of these statements are false or that Latinum made them knowing of their falsity. Accordingly, the Complaint should be dismissed as to Latinum with respect to the claim of false advertising.

### viii. Plaintiffs' Complaint fails to articulate sufficient facts to state a plausible claim to relief as to Latinum for unfair competition.

Plaintiffs claim that Latinum engaged in unfair competition in violation of Cal. Bus. & Prof. Code § 17200 by virtue of their alleged "violations of the federal and state securities laws, including sections 5(a), 5(c) and 12(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77l(a)(1), section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 thereunder; violation of federal criminal law, including 18 U.S.C. §1343, and sections 25110, 25503, 25504 and 25401 of the California Corporations Code." Plaintiffs' Complaint ¶ 170.

For the same reasons set forth above, Plaintiffs' Complaint does not allege sufficient facts to state a plausible claim to relief as to Latinum for any of these alleged violations. Accordingly, the Complaint should be dismissed as to Latinum.

### B. The Complaint should be dismissed as to Latinum under Fed. R. Civ. P. 12(b)(2) because this Court is without personal jurisdiction over Latinum.

### i. Standard of Review.

When a defendant challenges personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction.

*Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) . In the face of a properly supported motion for dismissal, the "plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *E&M Props. v. Razorgator, Inc.*, No. 08-10377, 2008 WL 1837261, at *2 (E.D. Mich. Apr. 23, 2008) (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).

Personal jurisdiction may be general, where the defendant has systematic and continuous contact with the forum, or it may be limited (or "specific"), in cases where the subject matter of the lawsuit is related to specific contacts by the defendant with the forum state. See, e.g., *E&M Props*, 2008 WL 1837261, at *2-4 (collecting authority).

### ii.    This Court cannot exercise general personal jurisdiction over Latinum.

The assertion of general personal jurisdiction over a corporate defendant is authorized by Mich. Comp. Laws § 600.711 if the corporation consents thereto, if it is incorporated under the laws of Michigan, or if it carries on a continuous and systematic part of its general business within the State of Michigan. *E&M Props.*, 2008 WL 1837261, at *2-3.

Notwithstanding the language of these statutes, pursuant to the Due Process clause of the United States Constitution, "[g]eneral jurisdiction is proper only where 'a defendant's contacts with the forum state **are of such a continuous and**

**systematic nature** that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Jones v. Blige*, No. 04-60184, 2006 WL 1329247, at *2 (E.D. Mich. May 16, 2006) (emphasis added) (quoting *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).

Notably, Plaintiffs' Complaint does not assert that this Court has general jurisdiction over Latinum, as Latinum's contacts with Michigan are clearly not continuous and systematic. Latinum is incorporated in the State of Delaware and its principal place of business is in California.[6] Plaintiffs' Complaint ¶ 6; Exhibit C. Plaintiffs' Complaint does not allege any contacts between Latinum and the State of Michigan, aside from the alleged investment of money with KJ by the Plaintiffs in this case, who reside in Michigan. Plaintiffs' Complaint ¶¶ 2-4.

Accordingly, the State of Michigan lacks general personal jurisdiction over Latinum, and jurisdiction must therefore be analyzed under the applicable standards for specific personal jurisdiction.

---

[6] Although this is not pled in Plaintiffs' Complaint, the Court "may take judicial notice of public records, and we are not required to accept as true factual allegations that are contradicted by those records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021). Public records available on the Delaware Division of Corporations' website indicate that GIBF GP, INC. (the legal entity name of Latinum) is a Delaware domestic corporation, incorporated in the State of Delaware on May 18, 2018. A true and correct copy of the Delaware Division of Corporations' webpage for GIBF GP, INC. is attached as Exhibit D.

C.  **Latinum does not have sufficient minimum contacts with
Michigan to establish specific personal jurisdiction in this forum.**

Michigan's corporate long-arm statute, Mich. Comp. Laws § 600.715, confers

long-arm jurisdiction over corporate defendants to the limits allowed by the Due

Process clause of the U.S. Constitution. *See, Inc. v. Imago Eyewear Pty, Ltd.*, No.

03-74761, 2004 WL 5569067, at *3 (E.D. Mich. Oct. 12, 2004), *aff'd*, 167 Fed.

Appx. 518, 523 (6th Cir. 2006). When a long-arm statute extends to the

constitutional limits of the Due Process Clause, the statutory and constitutional

inquiries merge, and the Court "need only determine whether the assertion of

personal jurisdiction over [the defendant] violates constitutional due process."

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir.

1996). Thus, in order to comply with Due Process, a plaintiff must establish that

significant minimum contacts exist sufficient to satisfy "traditional notions of fair

play and substantial justice." *See, Inc.*, 2004 WL 5569067, at *4 (quoting *Int'l Shoe

Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Sixth Circuit has set forth three elements which a Plaintiff must

demonstrate before a court can exercise specific personal jurisdiction: (1) the

defendant has **purposefully availed** itself of the privilege of acting in the forum state

or caused a consequence in the forum state; (2) the cause of action must have **arisen**

**from** the defendant's activities in the state; and (3) the acts of the defendant or

consequences caused by the defendant must have a **substantial enough connection**

with the forum state to make the exercise of jurisdiction over the defendant **reasonable**. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997). These requirements "ensure[], that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ).

In this case, the Plaintiffs have failed to demonstrate any of the three elements necessary to establish specific personal jurisdiction over Latinum.

### D. Latinum has not purposefully availed itself of Michigan.

The Sixth Circuit uses the sliding scale analysis used in *Zippo Mfg. Co. v. Zippo DOT Com*, 952 F.Supp. 1119 (W.D. Pa. 1997) in personal jurisdiction cases involving the Internet. See *Neogen Corp. v. Neo Gen Screening*, 282 F.3d 883, 890 (6th Cir. 2002). The first category of the *Zippo* sliding scale is a highly interactive website, which gives others the ability to download and enter into contracts. See *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996). This category is sufficient for a Court to exercise personal jurisdiction. See *Id*. The second category is "a middle ground where information can be exchanged between the viewer and the host computer. In such a case, the court examines the level of interactivity and the commercial nature of the exchange of the information." *Zippo*, 952 F.Supp. at 1124; see *Citigroup Inc., v. City Holding Co.*, 97 F.Supp.2d 549, 564-65 (S.D. N.Y. 2000). The last category is where the defendant makes information available on an

otherwise passive website. See *Id.*; see also *Maynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed.Appx. 814, 816-17 (Fed. Cir. 2001) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999)). A "passive" website is one that simply provides information; customers cannot transact business (e.g., purchase products) on a passive website. *Maynard*, 18 Fed.Appx. at 816-17. A website is passive even when it contains information regarding a company's products and services and displays the company's contact information. See *Id.* at 817. A "passive website is insufficient to establish purposeful availment for the purpose of due process." *McGill v. Gourmet Techs., Inc.*, 300 F.Supp.2d 501, 507 (E.D. Mich. 2004) (quoting *Maynard*, 18 Fed.Appx. at 816-17).

Plaintiffs do not allege that they used Latinum's website to effectuate the transactions at issue. The website they refer to contains information about Latinum and the Tokens, along with news, press releases, and blogs. The website also allows users to enter their contact information so that Latinum representatives can answer questions or comments, but Plaintiffs have not alleged that they ever took advantage of this feature and communicated directly with Latinum.

Furthermore, Latinum has not purposefully availed itself of Michigan even in the limited dealings alleged in this case with the Plaintiffs in Michigan because Plaintiffs admit in their Complaint that there was never any business transacted

between the Plaintiffs and Latinum. Plaintiffs' Complaint ¶ 101 ("KJ never purchased Tokens on behalf of Plaintiffs . . . ."); Plaintiffs' Complaint ¶ 102 ("KJ never purchased the Tokens on behalf of Plaintiffs . . . ."); Plaintiffs' Complaint ¶ 104 ("KJ never purchased the Tokens on behalf of Plaintiffs."); Plaintiffs' Complaint ¶ 106 ("Defendant KJ never purchased the Tokens on behalf of Plaintiffs . . . ."); Plaintiffs' Complaint ¶ 113 ("Defendant KJ never purchased and held Tokens on the Plaintiffs' behalf."); Plaintiffs' Complaint ¶ 125 ("Defendant KJ never purchased and held Tokens on the Plaintiffs' behalf."); Plaintiffs' Complaint ¶ 133 ("Defendant KJ never purchased Tokens for Plaintiffs."); Plaintiffs' Complaint ¶ 137 ("Defendant KJ never purchased and held Tokens on Plaintiffs' behalf."); Plaintiffs' Complaint ¶ 145 ("Defendant KJ never purchased and held Tokens on Plaintiffs' behalf.").

Simply put, Latinum has "not sought the 'benefits and protections' of Michigan law," and the Plaintiffs cannot establish the "purposeful availment" prong of the test for specific jurisdiction. *Brown v. FunKtionwear, Inc.*, No. 08-14572, 2009 WL 2568508, at *3; 2009 U.S. Dist. LEXIS 72962, at *7-8 (E.D. Mich. Aug. 18, 2009) (citation omitted). Latinum should be dismissed from the action for this reason alone, without the need for the Court to engage in any further analysis. *See, Inc. v. Imago Eyewear Pty Ltd.*, No. 04-2388, 167 Fed. Appx. 518, 523 (6th Cir. Feb.

14, 2006) ("As we find that the first prong [of the test for specific jurisdiction] is not satisfied, analysis of the second and third prongs is unnecessary.").

### E.    Plaintiffs' cause of action does not arise from the Latinum's activities in Michigan.

Even if the Plaintiffs could establish that Latinum purposefully availed itself of the forum, which they cannot, in order to establish specific jurisdiction, the Plaintiffs must also be able to establish that their causes of action arise from Latinum's activities in Michigan. *Kerry Steel, Inc.*, 106 F.3d at 150.

The mere "fact that defendant's allegedly infringing activity results in economic harm in Michigan . . . does not mean that plaintiff's cause of action arises out of or relates to defendant's contacts with Michigan" for purposes of conferring limited personal jurisdiction. *Hi-Tex Inc. v TSG, Inc.*, 87 F. Supp. 2d 738, 745 (E.D. Mich. 2000). While it is true that this second prong of the specific personal jurisdiction analysis "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities,'" *Kerry Steel, Inc.*, 106 F.3d at 152 (quoting *WEDGE Grp.*, 882 F.2d at 1091), "the mere fact that the transaction involved a Michigan party is obviously not sufficient." *Id.* It is only where the defendant's contacts with the forum state "are related to the operative facts of the controversy," that "an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267.

Plaintiffs have not pled facts sufficient to support a contention that Latinum's contacts with Michigan are related to the operative facts of this controversy. Indeed, the operative facts of this controversy do not involve Latinum at all. The operative facts of this controversy involve KJ, who is a California resident, acting on his own to induce the Plaintiffs, who are Michigan residents, to give him money for Tokens that he did not yet own. According to the Complaint, it was KJ who induced SJ to invest: "[i]n or about September 2021, **Defendant KJ induced SJ to invest in Latinum**." Plaintiffs' Complaint ¶ 29 (emphasis added). It was KJ who induced RJ to invest: "[i]n or about September of 2021, **Defendant KJ induced RJ to invest in Latinum** by, among other things, sending articles to RJ about how Latinum was going to revolutionize the crypto space." Plaintiffs' Complaint ¶ 43 (emphasis added). And it was KJ who induced FJ to invest: "[i]n or about October 2021, **Defendant KJ induced FJ to invest in Latinum Tokens**." Plaintiffs' Complaint ¶ 56 (emphasis added). Plaintiffs do not allege in their Complaint that any of their respective decisions to invest money with KJ had anything to do any activity of Latinum in Michigan or otherwise. Accordingly, the second prong of the specific personal jurisdiction analysis is not satisfied because Plaintiffs' causes of action do not arise from Latinum's activities in Michigan.

 **F. Exercising jurisdiction over Latinum in this matter would be unreasonable.**

Lastly, the Court must "consider whether exercising personal jurisdiction over [the defendant] would be reasonable, i.e., whether it would 'comport with 'traditional notions of fair play and substantial justice.'" *CompuServe*, 89 F.3d at 1267-68 (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1117 (6th Cir. 1994)). "A court must consider several factors in this context, including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Id.* (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988) ).

Given the substantial burden that would be placed on Latinum to litigate this claim far away from its principal place of business, representatives, documents, and other materials that might be relevant to this claim, and given the lack of any relevant contact whatsoever between Latinum and Michigan, exercising jurisdiction over Latinum in this matter would be unreasonable. Latinum is incorporated in the State of Delaware and its principal place of business is in California. Plaintiffs' Complaint ¶ 6; Exhibit C. Latinum does not conduct business in Michigan. It does not maintain offices in Michigan, nor does it have any employees, officers, directors, or agents in Michigan.

Simply put, "[n]othing done by the . . . defendants in relation to Michigan can fairly be said to have given rise to a reasonable expectation of their being haled into court in Michigan." *Int'l Techs. Consultants*, 107 F.3d at 396.

## III.   CONCLUSION

WHEREFORE, for the reasons stated herein, Latinum respectfully requests that the Court dismiss this action as against Latinum on the grounds that Plaintiffs have not stated a claim against Latinum upon which relief can be granted, and because of lack of personal jurisdiction over Latinum. This is a controversy that is entirely between the Plaintiffs and KJ. It has nothing to do with Latinum, and Plaintiffs do not allege any conduct on the part of Latinum that gives rise to any plausible cause of action. Plaintiffs admit in their Complaint that it was KJ that induced them to give him money for Tokens; that it was KJ who convinced them that the Tokens were a risk-free investment; and that it was KJ who took their money and never gave them Tokens. Plaintiffs' Complaint is utterly devoid of any factual assertions suggesting that they were induced to invest money with KJ as a result of the conduct on the part of Latinum, whether in the forum state or otherwise. The Complaint should therefore be dismissed as to Latinum for failure to state a claim upon which relief can be granted and for lack of personal jurisdiction.

Respectfully Submitted,

COOPER LEVENSON, P.A. PLUNKETT COONEY

By: /s/ Eric A. Browndorf By: /s/ Patrick C. Lannen
Eric A. Browndorf, Esq. Patrick C. Lannen (P73031)
William P. Rubley, Esq. John R. Stevenson (P70241)
1415 Marlton Pike East 38505 Woodward Ave., Suite 100
Cherry Hill Plaza, Suite 205 Bloomfield Hills, MI  48304
Cherry Hill, NJ 08034 (248) 901-4027
(856) 795-9110 plannen@plunkettcooney.com
ebrowndorf@cooperlevenson.com jstevenson@plunkettcooney.com
wrubley@cooperlevenson.com

 Attorneys for Defendant Bitcoin
Attorneys for Defendant Bitcoin Latinum
Latinum
*Applications for Admission Forthcoming*

Dated: February 23, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 23, 2022, he served a copy of this

document upon all parties of record by the Court's electronic filing system.

By: /s/ Patrick C. Lannen
  Patrick C. Lannen (P73031)

41