IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN (SOUTHERN DIVISION)

_____

RAYMOND JONNA, SIMON JONNA, and FARID JAMARDOV,
    Plaintiffs,

v.

KEVIN JONNA, and GIBF GP, INC. d/b/a BITCOIN LATINUM,
    Defendants.
_____

Case No. 22-cv-10208

HON. Laurie J. Michelson
MAG. Jonathan J.C. Grey

# REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER

## I. INTRODUCTION

Plaintiffs seek Latinum's bank records. That is an overreach. Phone conversations between Plaintiff Raymond Jonna and Defendant Kevin Jonna were produced. Transcripts confirm Plaintiffs had no interactions with Latinum, ever, none. Plaintiffs relied wholly on their cousin, Kevin Jonna, as their means of "investing." The request for "all" Latinum bank records is harassment.

## II. TRANSCRIBED CALLS

Raymond Jonna admitted he knew Plaintiffs did *not* invest *in* Latinum:

> **MR. R. JONNA:** I know you're not. There's no official board, there's no official place. There's no official website that says, "Raymond Jonna has this much invested and this many coins." Like, I worry about that, but naturally, bro.
> **MR. K. JONNA:** So, that's –that's a worry that you have to have with me –
> **MR. R. JONNA:** Right, right.

**Exhibit A**, page 18, lines 5-12.

1

Raymond affirmed this understanding.

> **MR. R. JONNA:** What's the deal, Kev? What's the deal with Latinum? Where's our, like, tokens? Where's our confirmation? Like, we have to get this, bro.
> **MR. K. JONNA:** Yes. You keep asking for a confirmation. There is no confirmation, Ray. It's through me. There is no other confirmation. Like, I – I don't know how – what other way to tell you that.
> **MR. R. JONNA:** What do you mean?
> **MR. K. JONNA:** There is –- there's not –- I am your confirmation. There's no, like – I – I can create something for you from me. There's no other way to give you – because there's no confirmation. You keep asking for these confirmations. There's just no confirmation, man.
> **MR. R. JONNA:** I don't get that though. You bought –- you bought the coins, right?
> **MR. K. JONNA:** Yes, but that's not your confirmation. That's my confirmation.
> **MR. R. JONNA:** Right.
> **MR. K. JONNA:** That has nothing to do with you guys.
> **MR. R. JONNA:** I know . . .

**Exhibit B**, at p. 16, lines 2-24.

Raymond confirmed he could only obtain tokens from an exchange.

> **MR. K. JONNA:** We don't have any tokens yet. I told you when they will be released.
> **MR. R. JONNA:** I understand that, but you have the order in for tokens.
> **MR. K. JONNA:** Yes, but I don't have the tokens.
> **MR. R. JONNA:** Right. I get that. I –I get it.
> **MR. K. JONNA:** Nobody has the tokens. The only way you can have tokens is if you're buying them off of the exchanges that they're on.
> **MR. R. JONNA:** Right. I totally understand that.

**Exhibit B** at p. 20, lines 13-21.

Raymond repeatedly acknowledged the "investments" was only *in Kevin*.

> **MR. K. JONNA:** The – the –I – I – I just don't understand what other way to tell you. You guys are under my umbrella. You're under my deal. Any

-2-

confirmation I give you would have to be through me. I can send you a paper from myself saying you have this many coins with me. That's what I can do. Beyond that, I – that's all I can do. Everything else is with me. You're under my umbrella. If you want a confirmation from me saying you have x amount of tokens with me, that's fine.
**MR. R. JONNA:** I mean, bro, at the very least, yes, sure. That's cool.

**Exhibit B**, p. 48, lines 14-25.[1]

### III.  ARGUMENT

**A. The Subpoena is Overly Broad and Should be Limited in Scope.**

Plaintiffs claim their Subpoena to Citibank was "targeted and narrowed to a specific account number." Pl.'s Resp. at 5. The Subpoena itself belies that assertion. See, ECF No. 52-2, PageID.1202.

The Subpoena should be quashed or narrowed to records showing only money Plaintiffs sent because Plaintiffs' own words confirm they were not relying on any Latinum conduct in "investing." The Subpoena could only be for harassment or for a fishing expedition, to see what turns up. It could not be for a permitted purpose.

Raymond said Plaintiffs *knew* there would be no "official" record showing they "invested." **Exhibit A**, page 18, lines 5-12. He said Plaintiffs would live with

---

[1] In response to the prior objection to the subpoena to Citibank, the Plaintiffs amended their complaint a second time, purportedly to allege financial impropriety by Latinum thereby making the financial records of Latinum discoverable. However, even a cursory review of the Second Amended Complaint shows that the new allegations are nothing more than legal "click bait" in that they lack any substance whatsoever. They allegations are speculation. Plaintiffs are hoping that the Court will ignore the lack of substance in the factual allegations and reward them with the fishing expedition that they hope will show malfeasance.

that "worry." *Id.* He said "I know" there is "no confirmation." **Exhibit B**, at p. 16, lines 2-24. Kevin *was* the confirmation. *Id.* If Plaintiffs wanted tokens for themselves, Plaintiffs would have had to have purchased them from a publicly available exchange. **Exhibit B** at p. 20, lines 13-21.

Given this, the request for *all* bank records is either harassing, or a fishing expedition, or both. The Motion should be granted because the scope of the Subpoena is not tied to these Plaintiffs or their claims.

Plaintiffs seek all bank statements, all transfers, all deposit slips for a period spanning four years. In Response, Plaintiffs fail to even dispute the request is not pegged to their claim. Instead, they argue that they did not request all financial information from Latinum's Citibank account (the Subpoena repeatedly uses the term "all") and that they are permitted to acquire all of Latinum's financial and bank information. First, it is disingenuous to argue "all" does not actually mean "all." Second, and more importantly, Plaintiffs give no specific basis for their request because they lack one. Having no legitimate purpose, the request is inappropriate.

Plaintiffs' reliance on *State Farm Mut. Auto Ins. Co. v. Warren Chiro & Rehab Clinic, P.C.*. 315 F.R.D. 220 (E.D. Mich. 2016) shows overreach. *Warren Chiro* involved motions to quash filed by non-parties. In denying the motion to quash, the Court noted that because one of the non-parties' deposition testimony indicated that the non-party *referred and directed patients to the defendant*, there

was a connection to the defendant and the financial records were relevant. Here, Plaintiffs admit, repeatedly, that they never interacted with Latinum prior to September 2021, and were not "directed" to Latinum. Rather, they "knew" they were "under Kevin's umbrella." **Exhibit** B, p. 48, lines 14-25.[2]

Plaintiffs' reliance on *State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 U.S. Dist. LEXIS 189646 (E.D. Mich. Aug. 13, 2013) is also misguided. There, the Court noted "sensitive financial information should *not* be routinely disclosed in discovery, at least not without an adequate protective order." *Id*. at *9. Here, a protective order limiting the scope of Plaintiffs' discovery requests to only those records showing the receipt of the funds from Kevin Jonna and the Plaintiffs, is appropriately tied to the case, and supported by law cited by Plaintiffs.

### B. The Requests are Not Proportional to the Needs of this Case.

In considering a motion for a protective order, "a district court may grant a protective order preventing the production of discovery to protect a party or entity from annoyance, embarrassment, oppression, or undue burden or expense." *Anwar*

---

[2] In response to the prior objection to the subpoena to Citibank, the Plaintiffs amended their complaint a second time, purportedly to allege financial impropriety by Latinum thereby making the financial records of Latinum discoverable. However, even a cursory review of the Second Amended Complaint shows that the new allegations are nothing more than legal "click bait" in that they lack any substance whatsoever. They allegations are speculation. Plaintiffs are hoping that the Court will ignore the lack of substance in the factual allegations and reward them with the fishing expedition that they hope will show malfeasance.

*v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (citing Fed. R. Civ. P. 26(c)(1)). While proportionality is not necessarily one of the factors considered under a Rule 26(c)(1) analysis, Latinum finds it necessary to address the lack of proportionality of the Subpoena because of Plaintiffs attempt to conflate the issues.[3]

Here, the discovery requests Plaintiffs made to Citibank are not proportional to the needs of the case because Plaintiffs already have access to relevant information (i.e. Latinum has already agreed to show Plaintiffs banking records indicating that their deposits were received)[4] and the discovery sought will not resolve the issues in this case (namely, because no other banking information is relevant or proportional to any of *Plaintiffs'* causes of action asserted against Latinum).

---

[3] In considering proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). However, "[R]ule [26(b)(1)] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, No. 2:15-cv-3023, 2018 U.S. Dist. LEXIS 114267, at *13 - *14 (S.D. Ohio July 10, 2018); *BlackRock Allocation Traget Shares: Series S Portfolio*, U.S. Dist. LEXIS 133373, at *1 - *2 (S.D.N.Y. Aug. 18, 2017); *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

[4] Plaintiffs' allegation in their Response to this Motion that Latinum did not provide all banking records showing their deposits, because the banking records only accounted for $491,000 and not the full $541,000, shows that the Plaintiffs have a fundamental misunderstanding of how crypto currency works. The remaining $50,000 payment received by Latinum was in the form of other crypto currency – which by definition would not appear in any banking records. Crypto currency is not maintained or kept by banks.

Remarkably, Plaintiffs argue now their case sounds in financial fraud and conversion. That is also untrue.[1] At best, Plaintiffs allege:

> 178. Further, upon information and belief, Latinum has been using ill-gotten investor funds to make inappropriate purchases for its executives, board members, and insiders.

There are no facts alleged that Latinum made inappropriate purchases for its executives, board members, or insiders. Plaintiffs hope that the financial records of Latinum will support their naked assertions or pressure a settlement. That is fishing.

Other case law cited by Plaintiffs is also distinguishable and inapplicable to the instant action. *Kasper v. AAC Holdings*, No. 3:15-cv-00923, 2017 U.S. Dist. LEXIS 231826 (M.D. Tenn. Oct 6, 2017) dealt with a Motion to Compel Compliance with a subpoena, which did not seek financial records.

### C. The Plaintiffs' Request for Financial Records is Premature.

Defendants are filing a Motion to Bifurcate the issue of agency from the remaining issues. Latinum does not believe that there are any issues of fact that Kevin Jonna was not acting as an agent of Latinum, but understands that the Plaintiffs are entitled to discovery on that issue. Truth is, Kevin Jonna was an agent of Plaintiffs when he pre-purchased the tokens. **Exhibits A** and **B**. Upon conclusion of the discovery related to agency, the Court determine there is no genuine issue of material fact Kevin Jonna was acting as Plaintiffs' agent, not as Latinum's agent. If it is the former, then Plaintiffs' claims fail as a matter of law.

Respectfully submitted:

| | |
|---|---|
| By: */s/ Eric A. Browndorf*<br>Eric A. Browndorf, Esq.<br>(Admitted *pro hac vice*)<br>William P. Rubley, Esq.<br>(Admitted *pro hac vice*)<br>1415 Marlton Pike East<br>Cherry Hill Plaza, Suite 205<br>Cherry Hill, NJ 08034<br>(856) 795-9110;<br>ebrowndorf@cooperlevenson.com<br>wrubley@cooperlevenson.com<br>*Attorneys for Defendants* | By: /s/ Patrick C. Lannen<br>Patrick C. Lannen, Esq. (P73031)<br>John R. Stevenson (P70241)<br>38505 Woodward Ave., Ste. 100<br>Bloomfield Hills, MI 48304<br>(248) 901-4027<br>plannen@plunkettcooney.com<br>jstevenson@plunkettcooney.com<br>*Attorneys for Defendants* |

Dated: November 4, 2022

## CERTIFICATE OF SERVICE

I, Patrick C. Lannen, hereby certify that on November 4, 2022, a copy of this Reply Memorandum of Law was filed electronically. Notice of this filing will be sent to all parties who have appeared by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Any party, that has not so appeared, has been sent a copy via regular mail.

By: /s/ Patrick C. Lannen
Patrick C. Lannen, Esq. (P73031)
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 901-4027
plannen@plunkettcooney.com

*Attorneys for Defendants*