UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND JONNA et. al.,

     Plaintiffs,

v.

BITCOIN LATINUM et. al.,

     Defendants.

Case No. 22-10208
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING LATINUM'S MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS [143]**

---

This securities fraud action, involving the Plaintiffs' purchase of Bitcoin Latinum's cryptocurrency, Token, has been actively litigated since its filing in February 2022. Well after the parties received their scheduling order and were engaged in discovery, Latinum argued that Plaintiffs' counsel had a conflict of interest based on its prior representation of a related third-party that required its disqualification. The issue ended up in the Sixth Circuit on an interlocutory appeal. The case was remanded back to this Court on January 10, 2024, after Plaintiffs retained new counsel. A few months later—and more than two years after the case was filed—Latinum filed a motion to compel arbitration and stay the case. (ECF No. 143.)

Plaintiffs, by contrast, say the case should remain in this Court. They argue that they never agreed to arbitrate their disputes, and even if they did, Latinum has waived its right to now seek arbitration by acting inconsistently with that right and

litigating this case for more than two years. For the reasons that follow, the Court agrees with Plaintiffs and denies Latinum's motion to compel arbitration.

## I.

According to the complaint, in the fall of 2021, Kevin Jonna claimed to have a lucrative investment opportunity for his cousins, Raymond and Simon Jonna, and Farid Jamardov. (ECF No. 53, PageID.1131–1144.) That opportunity was to invest in GIBF GP, Inc. (doing business as Bitcoin Latinum and referred to as "Latinum") and its cryptocurrency, Token. (*Id.*) Raymond, Simon, and Farid all say that Kevin made false statements about Latinum's Token that induced them to invest almost a half-a-million dollars. (*Id.*) After they invested, Kevin would not give them clear answers as to their investment. (*Id.*) And, say Plaintiffs, Kevin did all of this as Latinum's agent. (*Id.*) When Plaintiffs asked Kevin for their money back, they did not receive a response, nor their money, nor any Tokens. (ECF No. 151, PageID.5029.)

So Raymond, Simon, and Farid sued Kevin and Latinum, bringing a host of claims that mostly boil down to making false statements to induce Plaintiffs to invest and to unjustly retaining that investment.

This case has a lengthy procedural history. It was filed on February 1, 2022. (ECF No. 1.) Between that time and its motion to compel arbitration, Latinum has filed seventeen motions, three responses, five replies, two answers, two discovery plans, and a preliminary witness list; has participated in five conferences and two hearings; and has taken one appeal. (*See* ECF Nos. 6–7, 10, 16, 19–20, 22, 30, 40, 44–

46, 48, 50, 53–54, 56, 58–62, 64–66, 68, 70, 72, 77, 79, 88–89, 95, 97, 100–101, 107–110, 121, 131.)

While the Sixth Circuit was considering Latinum's appeal of the motion to disqualify Plaintiffs' counsel, it stayed the case in this Court. (ECF No. 134, PageID.4727.) After Plaintiffs retained new counsel, however, the Sixth Circuit dismissed the appeal as moot, remanded the case, and granted Plaintiffs' motion to lift the stay. (ECF No. 134.)

A few months later, Latinum filed this motion to compel arbitration and stay the proceedings. (ECF No. 143.) Latinum argues that Plaintiffs are bound by an arbitration provision in the Simple Agreement for Future Tokens (SAFT)—a contract posted on Latinum's website that governed the rights of token purchasers. (*Id.* at PageID.4754.) Among other things, the contract provides that these token purchasers and Latinum agree to arbitrate any disputes between them. (ECF No. 146, PageID.5007 ("the Purchaser and the Company will arbitrate Disputes through binding arbitration").) It is undisputed that Plaintiffs Raymond Jonna, Simon Jonna, and Farid Jamardov never executed a SAFT. (ECF No. 143, PageID.4776.) Only Kevin Jonna did. (ECF No. 143, PageID.4767.) But Latinum argues the Plaintiffs nonetheless agreed to the SAFT's terms by remitting money to Kevin Jonna (or, in at least one instance, to Latinum "for Kevin Jonna") in exchange for tokens—i.e., by "investing under Kevin's umbrella." (ECF No. 143, PageID.4767–4768.) This action bound them to the terms of the SAFT, says Latinum, because they knew "that a SAFT was required to purchase tokens." (ECF No. 143, PageID.4777.)

Plaintiffs argue the alleged arbitration agreement is not valid because there was no mutual assent between them and Latinum. (ECF No. 151, PageID.5036–5037.) They further argue that, irrespective of the validity issue, Latinum has waived arbitration by acting inconsistently with this right, i.e., by litigating in court for too long before requesting arbitration. (ECF No. 151, PageID.5035–5036.)

The motion is fully briefed (ECF Nos. 151, 152) and does not require further argument, *see* E.D. Mich. LR 7.1(f).

## II.

"A written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir.2003) (quoting 9 U.S.C. § 2). But "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Id.*

Although courts have previously held that the party opposing arbitration "bears the burden of establishing that the dispute is nonarbitrable," *Rex v. CSA-Credit Sols. of Am., Inc.*, 507 F. Supp. 2d 788, 793 (W.D. Mich. 2007) (citing *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000)), this holding relied on an assumption of a "liberal federal policy favoring arbitration," *Green Tree*, 531 U.S. 91 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24

4

(1983)). The Supreme Court recently clarified that the federal policy "favoring arbitration" is not designed to foster arbitration, but rather to "place [arbitration] agreements upon the same footing as other contracts." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, (2022) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)). Arbitration contracts are simply to be enforced as any other contract would be.

"Because arbitration agreements are fundamentally contracts, [the Court] review[s] the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir.2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)). Under Michigan law[1], "The party seeking to enforce a contract has the burden of showing that it exists." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (citing *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 504 (Mich. Ct. App. 1992)).

If the party opposing arbitration challenges the formation of the arbitration contract, the court must evaluate whether there is a genuine issue of fact over whether the parties assented to the contract. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 835 (6th Cir. 2021). If "the court finds that the making of the arbitration agreement (or its breach) is in issue, the court shall proceed summarily to the trial on the disputed question." *Id.* at 837 (internal quotation marks

---

[1] Both parties agree that Michigan law governs here. (*See* ECF No. 143, PageID.4784; ECF No. 151, PageID.5031.)

omitted) (citing *Moses H. Cone*, 460 U.S. at 22). If the court is satisfied that the parties have agreed to arbitrate, and "the making of [that] agreement . . . is not in issue," the court shall compel arbitration. *Id.* Conversely, if the Court finds that the parties have not agreed to arbitrate and there is no genuine dispute of material fact regarding that point, the motion to compel will be denied.

## III.

### A. Delegation

As an initial matter, the Court must address Defendants' delegation argument. Defendants contend that "any issues regarding the arbitrability of this dispute must be determined by the . . . arbitrator." (ECF No. 143, PageID.4778.) They say, "the parties agreed, through the arbitration provisions of the [SAFT], that the gateway issue of arbitrability must be determined by a Judicial Arbitration and Mediation Services, Inc. ("JAMS") arbitrator, not the Court." (ECF No. 143, PageID.4754.)

True, "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (internal citation omitted). But "[t]he issue of [a] contract's validity is different from the issue [of] whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).

In other words, the Federal Arbitration Act allows parties to agree that an arbitrator, rather than a court, will determine "'gateway' questions of 'arbitrability,' such as whether the parties['] . . . [arbitration] agreement covers a particular

controversy," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010), "or whether a concededly binding arbitration clause applies to a certain type of controversy," *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). *See also Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). But a delegation clause cannot relieve the Court of its duty to conduct the first inquiry: whether a valid agreement to arbitrate exists. *See Henry*, 586 U.S. at 69 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Boykin*, 3 F.4th at 843 ("[T]he duty to arbitrate arises only from the party's consent. So parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate. And courts must confirm that they did so before shipping the dispute to arbitration . . . ." (citation omitted)); *Coinbase, Inc. v. Suski*, No. 23-3, 2024 WL 2333424, at *3 (U.S. May 23, 2024) ("Arbitration is 'a way to resolve those disputes— but only those disputes—that the parties have agreed to submit to arbitration.' Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?" (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "[A] contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel Party B to arbitrate the question of the genuineness of its signature." *Taylor v. Pilot Corp.*, 955 F.3d 572, 577 (6th Cir. 2020) (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991)).

So the Court must "first satisfy itself that the agreement was validly formed before granting a motion to compel arbitration." *Id*.

## B. Contract Formation

The essence of the dispute here is whether Plaintiffs ever agreed to the terms of the SAFT, including its arbitration provision.

To determine whether a contract was formed, courts look to state law. Michigan law has various requirements for a valid contract. There must be "an offer and acceptance," *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Pakideh v. Franklin Commercial Mortg. Grp., Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995)), as well as "'(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Id.* (quoting *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005)). "Most of the elements listed above reflect the fact that the parties to a contract must have a meeting of the minds on all essential terms of a contract. . . . Where mutual assent does not exist, a contract does not exist." *Calhoun Cty. v. Blue Cross Blue Shield Michigan*, 824 N.W.2d 202, 209 (Mich. Ct. App. 2012) (internal quotation marks and citations omitted).

"A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Stanton v. Dachille*, 463 N.W.2d 479, 483 (Mich. Ct. App. 1990) (citation omitted). "[A]cceptance may be implied from the party's conduct when the offer does not require a specific form of acceptance." *Patrick v. U.S. Tangible Investment Corp.*, 595 N.W.2d 162, 167 (Mich. Ct. App. 1999).

Here, despite the fact that Plaintiffs never signed an SAFT, Latinum argues that "Plaintiffs entered into a valid contract through performance by remitting money to Kevin [Jonna] and Bitcoin Latinum for purchase of pre-sale Tokens while at the same time being admittedly well aware of the white paper and the SAFT, which contained the governing arbitration language." (ECF No. 143, PageID.4785.) It analogizes to arbitration agreements that can be accepted by continued employment to argue that no signature is needed on the agreement. (143, 4776.)

One case that Latinum relies heavily on is *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967 (6th Cir. 2007). In *Seawright*, an employer began implementing an arbitration program to resolve employee disputes. *Id.* at 970. It informed employees of the program "through a series of announcements and informational meetings," and by mailing letters and brochures to employees. *Id.* at 970. The brochures advised employees that "seeking, accepting, or continuing employment" after the effective date "means that you agree to resolve employment related claims against the company or another employee through this process instead of through the court system." *Id.* at 971. The Sixth Circuit held that since Seawright continued her employment after she attended an informational meeting, signed an attendance sheet for the meeting, and received the informational brochure, she had agreed to arbitrate her claims. *Id.* at 971–72.

Plaintiffs counter that Latinum attempts to stretch *Seawright*'s holding too far. (ECF No. 151, PageID.5037). Latinum merely published the SAFT on its website, and unlike Seawright's employer, did not take any affirmative steps to ensure

9

Plaintiffs knew of or read the SAFT before Latinum accepted their money. (*Id.* at PageID.5038.) They also say Latinum misunderstands Raymond's deposition testimony, and that Raymond "did not recall seeing [a SAFT] or discussing one with [Simon] or [Kevin] prior to investing." (*Id.* at PageID.5039). Lastly, say Plaintiffs, unlike the contract in *Seawright* which included an "express condition that continued employment would constitute acceptance," Latinum did not "expressly condition[] its receipt of Plaintiffs' money upon their acceptance" of the SAFT. (*Id.* at PageID.5040.) "It merely posted a form SAFT on its website and contends that because [Raymond] viewed the website at some point, the parties agreed to arbitration." (*Id.*)

As Plaintiffs correctly point out, the Sixth Circuit rejected a similar argument to Latinum's in *Hergenreder,* 656 F.3d 411. In *Hergenreder*, an employer argued that its former employee was subject to an arbitration agreement despite her contention that she was never notified of its existence. *Id.* at 413. When Hergenreder began her employment, she received an employee handbook which explicitly stated it was not a contract, but included a description of an arbitration agreement. *Id.* at 414–15. The handbook asked employees to sign it as a "symbolic" commitment, but made clear that a legal commitment to arbitrate disputes was made through accepting or continuing their employment with the company. *Id.* at 415. Hergenreder never signed the agreement. *Id.* at 415–16. She also claimed she never saw the agreement, and therefore was not bound by it; while her employer argued she accepted the agreement through her continued employment, regardless of whether she saw the agreement or not. *Id.*

The Sixth Circuit concluded that Hergenreder was not bound to the arbitration agreement, because "[t]here was neither an offer nor an acceptance," and thus no contract was formed. *Id.* at 418. The court noted that Hergenreder "was not *required* to refer to the [employee handbook]," the handbook itself was not a contract, and the handbook's mere reference to arbitration procedures was "not the manifestation of willingness to enter into a bargain" and "sa[id] nothing that would indicate to Hergenreder that accepting or continuing her job . . . would constitute acceptance." *Id.* (internal quotation marks omitted). "Indeed," the Court noted, "it is incorrect to conflate the fact that Hergenreder knew generally of the [handbook] with the notion that she knew of the arbitration language—and [her employer's] desire to create an arbitration agreement—contained within the [handbook]." *Id.* at 418. The Court continued, "[w]ere Hergenreder required to read, or even notified of the importance of reading, the [handbook], the analysis here might be different. But this court's inquiry is focused on whether there is an objective manifestation of intent by [the employer] to enter into an agreement with (and invite acceptance by) Hergenreder," which there was not. *Id.*

This case is more analogous to *Hergenreder* than to *Seawright*. For one, the Plaintiffs here never signed an arbitration agreement with Latinum. Nor, as in *Seawright*, did they attend trainings or sign an acknowledgement that they understood the terms of the arbitration provision in the SAFT. The evidence is dubious at best as to whether Raymond even read the SAFT or its arbitration provision, and he was not *required* to read the agreement before Latinum accepted

11

his money; there is no evidence, for example, that when Raymond submitted payment to Latinum and marked it as being on behalf of Kevin Jonna, that the website informed him of the SAFT, its arbitration provision, or that by submitting payment he was agreeing to the terms contained on the website. (*See* ECF No. 143-5, PageID.4920 (deposition of Raymond Jonna) ("Q: Did you go through the website and click on the buy tokens? A: I may have, I'm not sure. Q: Did you actually navigate through the on-line prompts to invest funds? A: I may have. I'm not sure. Q: In doing so, do you recall seeing references to or links to SAFTs? A: I don't recall."); ECF No. 151-2, PageID.5057 (affidavit of Raymond Jonna) ("I never signed a SAFT with Latinum. I was never asked to sign a SAFT. . . . I never saw a SAFT prior to the commencement of this litigation"); 151-3, 5061 (affidavit of Simon Jonna) (same); 151-4, 5065 (affidavit of Farid Jamardov) (same))[2].

As the Sixth Circuit explained in *Hergenreder*, someone does not agree to a contract merely by "unwittingly tak[ing] actions that the document says will constitute acceptance of the offer." 656 F.3d at 420. So even if the SAFT specified that purchasing tokens bound the purchasers to its arbitration provision, if Plaintiffs had

---

[2] Latinum argues the Court "should not credit Plaintiffs' Affidavits . . . because they are nothing but self-serving affirmations, containing only conclusory assertions and little to no factual support." (ECF No. 152, PageID.5074.) But there is no prohibition against "self-serving" affidavits. "At one level, all statements in litigation are self-serving." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019) "As courts have explained, parties should avoid this 'self-serving' label because it does nothing to undermine the other side's evidence under Rule 56." *Boykin*, 3 F.4th at 841 (collecting cases).

no knowledge of the SAFT prior to purchasing tokens, their purchase would not constitute acceptance of the SAFT.

But Latinum does not even have that to rest on. The SAFT does not say that an investor accepts its terms by remitting money to Latinum; in fact, it appears to require a signature for its terms to be binding. (ECF 146, PageID.4995 ("*By signing the Signature Page to the SAFT, you agree to be bound by the terms of this Purchase agreement . . . .*" (emphasis added)); *Id.* at PageID.5008 ("*By agreeing to be bound by the Terms*, the Purchaser either (i) acknowledges and agrees that the Purchaser has read and understands the rules of JAMS, or (ii) waives its opportunity to read [or object to] the rules of JAMS . . . ." (emphasis added)).)

Plaintiffs unequivocally state they never saw or signed a SAFT. In contrast, Latinum relies only on Raymond's deposition testimony—which does not clearly state whether Raymond saw the SAFT—and presents no evidence as to the other two Plaintiffs. Importantly, Latinum provides no evidence that any of the Plaintiffs signed the SAFT. Therefore, the Court concludes that Plaintiffs never assented to be bound by the SAFT or its arbitration provision. So there is no valid arbitration agreement governing the dispute here.

## C. Waiver

The Court further notes that even if Plaintiffs were somehow bound by the arbitration provision in the SAFT, Latinum has waived the right to enforce arbitration.

13

"Generally, courts disfavor the waiver of a contractual right to arbitration. However, a party may waive any contractual rights, including the right to arbitration." *Nexteer Automotive Corp. v. Mando America Corp*, 886 N.W.2d 906, 909 (Mich. Ct. App. 2016). "A waiver is an intentional relinquishment or abandonment of a known right." *Id.* "Whether one has waived his right to arbitration depends on the particular facts and circumstances of each case." *Madison Dist. Public Schools v. Myers*, 637 N.W.2d 526, 529 (Mich. Ct. App. 2001). "The party arguing there has been a waiver of this right bears a heavy burden of proof and must demonstrate knowledge of an existing right to compel arbitration, [and] acts inconsistent with the right to arbitrate. . . ." *Id.* (internal quotation marks and citations omitted)

"Until recently, federal courts, including [the Sixth Circuit], held that a party who participates extensively in litigation has not waived its right to arbitrate unless 'its conduct has prejudiced the other side.'" *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 414 (2022)). But the Supreme Court recently abrogated the prejudice prong of that analysis, stating "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 596 U.S. at 418. So now in evaluating whether a party has waived their right to arbitrate, Courts "apply ordinary waiver rules, looking for the 'intentional relinquishment or abandonment of a known right.'" *Schwebke*, 96 F.4th at 974 (citing *Morgan*, 596 U.S. at 417).

Before *Morgan*, the Sixth Circuit rule was that a "party may waive an agreement to arbitrate" when it both: "(1) tak[es] actions that are completely

14

inconsistent with any reliance on an arbitration agreement; and (2) delay[s] its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010) (internal quotation marks and citation omitted). The Sixth Circuit has "not yet had an opportunity to consider *Morgan*'s effect on" that rule. *Schwebke*, 96 F.4th at 974; *see also id.* at 974–75 ("In this case, we need not decide whether *Morgan* did more than that because the parties agree that, once stripped of its prejudice requirement, our pre-*Morgan* caselaw remains intact. Given this posture, we assume *without deciding* that our precedent asking whether a party's actions are 'completely inconsistent' with reliance on arbitration survives *Morgan*." (emphasis added)). But in *Morgan*, the Supreme Court said that the Eight Circuit could continue using its "current waiver inquiry," once "stripped of its prejudice requirement," if it chose to. 596 U.S. at 419. So it is possible that the first prong of the Sixth Circuit analysis remains intact.

Analyzing the facts under this prong, the Court in *Shwebke* held that the defendant had waived its right to assert arbitration where it engaged in "extensive discovery," including participating in a discovery conference, serving interrogatories and requests for production, filing a joint discovery plan pursuant to Federal Rule of Civil Procedure 26(f) which made no reference to the arbitration clause, producing "tens of thousands of pages of documents" in response to the plaintiff's discovery requests, issuing fourteen third-party subpoenas for records, producing witnesses for deposition and participating in those depositions, taking a third-party witness's deposition, filing a witness list, and agreeing to an extension of the discovery deadline

to accommodate three more depositions. 96 F.4th at 973. The Court reasoned that "UWM implicitly waived its right to compel arbitration because its conduct was completely inconsistent with reliance on its arbitration right." *Id.*

District courts in this circuit have also considered what constitutes waiver of an arbitration provision post-*Morgan*, and even post-*Schwebke*. The consensus appears to be that the first prong of the test remains intact; that is, if a party acts completely inconsistently with their right to assert arbitration, it waives that right.

A Tennessee district court, for instance, examined the history of the first prong to determine whether it would survive the *Morgan* ruling. *Doe v. Piraino*, No. 22-00560, 2024 WL 1421253, at *6 (M.D. Tenn. Apr. 2, 2024) (collecting cases). The court noted that this first prong long predates the second. *Id.* ("Following the trail of citations in support of this standard back through time, it becomes apparent that, while the second prong is of fairly recent vintage, the first dates to an era before arbitration agreements were granted markedly favored status by the federal courts. . . . courts have long accepted that arbitration, like any other contract term, can be waived and that waiver is defined as the intentional relinquishment of a known right.") Accordingly, the court concluded "that the Sixth Circuit, when faced with re-establishing the standard to be applied to the question of whether a party has waived its right to enforce an arbitration provision, will [likely] apply a test with just one prong, asking whether the party's conduct is completely inconsistent with its arbitration rights." *Id.*

So that court applied this "completely inconsistent" test, and found that a party who filed motions to dismiss on the merits that did not raise arbitration, but almost a year later filed an answer that did assert arbitration as a defense, had waived its right to assert arbitration. *Id.* at *2–5; *id.* at *11 ("[Defendant's] conduct was completely inconsistent with an intention to arbitrate. It filed two dispositive motions going to the merits of the plaintiffs' claims and a motion to strike many of the allegations in the Amended Complaint, the resolution of which required a substantial investment in court time and resources. [Defendant] did not invoke an arbitration agreement until after the court had, for the most part, denied these motions—nearly a year after [the case began] . . . . The claims it sought to have dismissed are the same claims it now contends are subject to arbitration.") The Court noted, "[a]lthough the parties did not engage in discovery, the Sixth Circuit has observed that seeking to have a case dismissed on the merits 'is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration.'" *Id.* at *11 (quoting *Solo v. United Parcel Serv.*, 947 F.3d 968, 975 (6th Cir. 2020)),

District courts in Ohio and Michigan have also continued to apply the "completely inconsistent" test after *Morgan. See e.g., Adelstein v. Walmart Inc.*, No. 23-00067, 2024 WL 1347043, at *5 (N.D. Ohio Mar. 30, 2024) ("The Sixth Circuit's first prong, that of actions taken that are 'completely inconsistent' with arbitration, appears to have survived *Morgan*." (citing *Schwebke*, 96 F.4th at 974–75)); *Kloosterman v. Metropolitan Hospital et al*, Case No. 22-00944 (W.D. Mich. Oct 11, 2022) (same).

But while Courts tend to agree on which test to apply, they have reached different results in somewhat similar circumstances. *Compare Piraino*, 2024 WL 1421253, at *11 (holding that a defendant who did not engage in discovery but did file motions to dismiss on the merits had waived its right to compel arbitration) *with Kloosterman v. Metropolitan Hospital*, No. 22-00944 (holding that a defendant who did not engage in discovery, but did file motions to dismiss, an answer, a motion to stay discovery, and a joint status report, had *not* waived its right to compel arbitration). As the *Piraino* court noted, "there is 'no rigid rule as to what constitutes waiver of the right to arbitrate,' the issue is 'decided based on the circumstances of each particular case.'" 2024 WL 1421253, at *10 (quoting *S. Sys., Inc. v. Torrid Oven Ltd.*, 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000)). "A non-exhaustive list of facts examined by courts in determining whether there has been a waiver of the right to arbitrate includes the degree of pretrial litigation, the length of delay before invoking arbitration, whether the parties have filed pretrial motions, whether the parties have litigated issues on the merits, and whether the parties have engaged in extensive discovery." *Id.*

Undertaking this analysis, the Court notes that Latinum has engaged in the following in the two years that the case has been pending:

Pleadings

- Filed answers to the first amended complaint (ECF No. 44) and second amended complaint (ECF No. 56) that did not mention arbitration

Motion practice

- Filed a motion to dismiss (ECF No. 7) with an ex parte motion for leave to file excess pages (ECF No. 6) that did not mention arbitration

- Filed a response to Plaintiffs' motion to strike (ECF No. 10)

- Filed a motion to dismiss the amended complaint (ECF No. 19) with an ex parte motion for leave to file excess pages (ECF No. 16) and a reply (ECF No. 22)

- Filed a motion for a protective order to stay discovery (ECF No. 30)

- Filed a motion to disqualify counsel (ECF No. 65), accompanied by motions to seal exhibits attached to that motion (ECF Nos. 68, 70, 72), a motion for extension of time to file a reply (ECF No. 79), and a reply (ECF No. 77), and engaged in oral argument on May 5, 2023 (*see* ECF Nos. 109, 110)

- Filed a motion for leave to file a supplemental brief with third-party intervenor (ECF Nos. 100, 101), including a reply (ECF No. 107)

Discovery and related motions

- Jointly filed a discovery plan with Plaintiffs, pursuant to Federal Rule of Civil Procedure 26(f), that made no mention of arbitration (ECF Nos. 20, 48)

- Jointly filed a stipulated protective order (ECF No. 50)

- Filed a motion for a protective order to limit the scope of a subpoena (ECF No. 54), including a reply (ECF Nos. 59, 61) and a motion for additional pages in its reply (ECF No. 60), and participated in oral argument on October 27, 2022 (ECF No. 58)

- Filed a motion to bifurcate discovery (ECF No. 62) and participated in oral argument on October 27, 2022 (ECF No. 58)

- Filed a preliminary witness list (ECF No. 66)

- Filed a response to Plaintiffs' motion to compel (ECF No. 88)

19

- Filed a cross motion to compel (ECF No. 89), including a reply (ECF No. 97) and a response to Plaintiffs' motion to strike this cross motion (ECF No. 95), and participated in oral argument on May 5, 2023 (*see* ECF Nos. 109, 110)

- Filed a joint motion to stay discovery or for a case management conference (ECF No. 108)

- Filed a joint stipulation to extend discovery (ECF No. 131)

<u>Conferences</u>

- Participated in status conferences with the Court on July 20, 2022; August 18, 2022; September 9, 2022; and December 12, 2022, and never raised arbitration (*see* ECF Nos. 40, 45, 53, 64)

- Participated in a scheduling conference on September 1, 2022 and never raised arbitration (ECF No. 46)

<u>Appeal</u>

- Filed an appeal of the court's order denying its motion to disqualify counsel (ECF No. 121)

As this lists reveals, Latinum has, for two years, engaged in the acts the courts have pointed to in finding waiver: substantive motions to dismiss, answers that do not raise an arbitration defense, a proposed scheduling order that does not raise arbitration, discovery on the merits and discovery motions, and an appeal to the Sixth Circuit.

As in *Piraino*, Latinum now seeks to compel arbitration of the same claims it earlier sought to dismiss. And at no point, before this motion, did it assert the arbitration agreement as a defense. Unlike *Kloosterman* and *Adelstein*, where the courts did not find waiver, this case has proceeded to discovery and has involved a

multitude of motions, hearings, and conferences, which all "required a substantial investment in court time and resources." *Piraino*, 2024 WL 1421253, at *11.

The *Piraino* court also suggested that if the "completely inconsistent" test did not remain intact, the Sixth Circuit may instead "adopt a state-law standard, as state contract law has generally been held to inform the interpretation of arbitration agreements." 2024 WL 1421253, at *7. But because of the similarity of Tennessee and federal law regarding waiver, the court concluded that applying a state-based test would not change the outcome of that case. *Id.* at *7 (citing *AtriCure, Inc. v. Meng*, 12 F.4th 516, 522 (6th Cir. 2021)).

So too with Michigan law. As the *Kloosterman* court noted, "Michigan has adopted the Uniform Arbitration Act, which is largely based on the FAA." *Kloosterman*, Case No. 22-00944 (citation omitted). Indeed, Michigan courts applied the same test as the Sixth Circuit for determining waiver: "The 'party arguing there has been a waiver of this right bears a heavy burden of proof' and 'must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts.'" *Madison Dist. Pub. Sch. v. Myers*, 637 N.W.2d 526, 529 (Mich. Ct. App. 2001) (quoting *Salesin v. State Farm Fire & Casualty Co.*, 581 N.W.2d 781, 786 (Mich. Ct. App. 1998)).

Latinum appears to challenge waiver primarily by saying it did not *know* of its right to compel Plaintiffs to arbitrate and therefore, that it did not intentionally relinquish a known right. It claims "it wasn't until the deposition of Raymond [Jonna] that Bitcoin Latinum learned for the first time that the Plaintiffs had reviewed and

read the SAFT prior to 'investing' under Kevin's 'umbrella.'" (ECF No. 143, PageID.4768.) More specifically, Latinum claims it could not assert arbitration as a defense against Plaintiffs until after it deposed Raymond for two reasons: first, it was not until Raymond's deposition that it learned the Plaintiffs read the SAFT on the website and second, it was not until this deposition that it learned the Plaintiffs were "investing under Kevin's umbrella." (ECF No. 152, PageID.50712–5072.)

The Court is not persuaded. First, the record evidence directly contradicts the second claim. In the complaint filed on February 1, 2022, Plaintiffs alleged "they invested in Latinum through KJ [Kevin Jonna]." (ECF No. 1, PageID.16.) Presumably, Latinum would only need to review its records to see that this was true—as far as the Court is aware, Latinum had no contract with any of the Plaintiffs and any funds it received from them were marked "for Kevin Jonna." So from the very beginning of the case, Latinum knew that Plaintiffs were investing under Kevin's "umbrella."

And second, Latinum certainly knew about the SAFT from the beginning of the litigation and that it was publicly available to Plaintiffs on its own website. This is further evidenced by Latinum's questioning of Raymond Jonna in his deposition, where it asked about the SAFT. If this SAFT bound all investors, not merely the investor who signed it, then Latinum could have asserted arbitration from the very beginning. True, "the Sixth Circuit has made clear that [performance] can manifest assent" only when a party "*knows* that [such performance] manifests assent." *Williams v. FCA US LLC*, No. 17-10097, 2018 WL 2364068, at *5 (E.D. Mich. May

24, 2018). So Latinum may not have prevailed on a motion to compel arbitration before learning that the Plaintiffs knew of the arbitration agreement. But "the filing of a motion to compel arbitration is not the only means by which a party may preserve its right to enforce an arbitration agreement. Typically, defendants may raise and preserve the right by asserting it as an affirmative defense in an answer." *Piraino*, 2024 WL 1421253, at \*11. And it could have been the focus of early discovery. Instead, Latinum waited two years into active and contentious litigation to raise arbitration in any way.

Thus, if a contractual right to arbitration existed, Latinum acted completely inconsistently with reliance on that right. So it is waived.

### D. Stay Pending Appeal

One final issue. Latinum "formally request[ed]" if the Court denied the motion to compel arbitration, that it "stay this action pending interlocutory review," which Latinum intends to seek. (ECF No. 143, PageID.4755.) In support of this request, it cites Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(A) and § 16(a)(1)(C), and *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). But as Plaintiffs correctly point out, *Coinbase* only applies to stay the case "while the interlocutory appeal is ongoing," not before an appeal is taken. (ECF No. 151, PageID.5046 (citing coinbase at 738).) In its reply, Latinum appears to abandon its request for a stay pending interlocutory appeal. (ECF No. 152, PageID.5076 ("To clarify, in the Motion to Compel Arbitration, Bitcoin Latinum is requesting a stay of the district court proceedings during the pendency of arbitration before JAMS, not during an

interlocutory appeal before the Sixth Circuit. In the Motion to Compel Arbitration, Bitcoin Latinum merely included the *Coinbase* decision as a reference and is not affirmatively requesting a stay pending any interlocutory appeal.").) But to the extent there was such a request, it is denied.

## IV.

For these reasons, Latinum's motion to compel arbitration and its request for a stay (ECF No. 143) are DENIED.

SO ORDERED.

Dated: June 17, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

24